John E.B. Myers
State Bar No. 91300
3200 5th Ave. Sacramento, CA 95817
Telephone: 916-739-7176
FAX: 916-739-7272
jmyers@pacific.edu
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTER ELLEN NELSON,<br>Plaintiff, | No. 2:11-CV-00140-GEB-JFM |
| vs. | Plaintiff's Trial Brief<br>Trial Information:<br>Date: March 15, 2011<br>Time: 9:00 a.m. |
| JOSEPH PETTERLE,<br>Defendant. | Judge: Garland E. Burrell, Jr.<br>Courtroom 10 |

**Table of Contents**

I.    Case Status ................................................................................................. 3
II.   Facts .......................................................................................................... 3
III.  Governing Substantive Law ....................................................................... 7
IV.   Mother's Prima Facie Case for Return of Child ......................................... 9
      A.  The Wrongful Retention Occurred on August 15, 2010 ...................... 9
      B.  Immediately Prior to the Retention, the Child's Habitual Residence Was Iceland .. 9
      C.  The Wrongful Retention Breached Mother's Rights of Custody ........... 14
      D.  Mother Was Exercising Right of Custody at Time of Wrongful Retention ............ 14
      E.  Conclusion Regarding Mother's Prima Facie Case ............................... 15

V.    None of the Affirmative Defenses to Return Apply .................................... 15
      A.  Returning the Child to Mother Does Not Pose a Grave Risk to the Child .............. 16
      B.  Returning the Child to Mother Will Not Violate Fundamental Principles of American Law ...... 16
      C. Mother Filed Her Petition in a Timely Fashion ..................................... 17
      D. Mother Was Actually Exercising Her Right to Custody at the Time of the Wrongful Retention ............................................................. 17
      E. Mother Did Not Consent to or Acquiesce in the Retention of her Child ................ 17
      F. This is Not a Case in Which the Child Should Decide Where to Live ........................ 17
      G. Conclusion Regarding Affirmative Defenses ........................................... 21

VI. Evidentiary Issues.................................................................................... 21
    A. Authentication ................................................................................ 21
    B. Best Evidence Rule .......................................................................... 22
    C. Request for Judicial Notice ............................................................. 22
    D. The Nebraska Divorce Decree......................................................... 22
    E. California State Court Documents ................................................... 22
    F. The Child's Icelandic Passport......................................................... 23
    G. Email from Father to Mother Confirming Reservation for Child to Return to Mother
       on August 15, 2010 ...................................................................... 23
    H. Icelandic Documents Confirming that the Child Lives in Iceland with Mother...... 24

VII. Conclusion.......................................................................................... 24

## Table of Cases

Abbott v. Abbott, 130 S. Ct. 1983 (2010)................................................ 3, 7, 8, 24
Asvesta v. Petroutsas, 580 F.3d 1000 (9th Cir. 2009) ..................................... 16
Bader v. Kramer, 484 F.3d 666 (4th Cir. 2007) ............................................... 14
Charalambous v. Charalambous, 627 F.3d 462 (1st Cir. 2010)............................... 7
Cuellar v. Joyce, 596 F.3d 505 (9th Cir. 2010).............................................. 7, 8
England v. England, 234 F.3d 268 (5th Cir. 2000) ....................................... 18, 19
Feder v. Evans-Feder, 63 F.3d 217 (3d Cir. 1995)............................................ 13
Friedrich v. Friedrich, 78 F.3d 1060 (5th Cir. 2004) ....................................... 14
Haimdas v. Haimdas, 720 F. Supp. 2d 183 (E.D. N.Y. 2010)........................... 18, 19
In re B. Del C.S.B., 559 F.3d 999 (9th Cir. 2009)............................................ 9
In re Bates, No. CA 122-89, High Court of Justice, England............................... 13
Mozes v. Mozes, 239 F.3d 1067 (9th Cir. 2001)....................................... 9, 10-13
Ruiz v. Tenorio, 392 F.3d 1247 (11th Cir. 2004).......................................... 12
Ryder v. Ryder, 49 F.3d 369 (8th Cir. 1995) ............................................... 13
Tsai-Yi Yang v. Fu-Chiang Tsui, 499 F.3d 259 (3d Cir. 2007) ................... 16, 20-21

## Table of Statutes and Treaties

California Family Code ...................................................................... 18
Convention on the Civil Aspects of International Child Abduction ........3, 7, 9-10, 14, 16-18
Federal Rules of Evidence ............................................................... 22-24
Hogoboom & King, Family Law ........................................................ 18-19
International Child Abduction Remedies Act, 42 U.S.C. § 11601-11610....3, 8-10, 16-18, 21
Wright & Graham, Federal Practice and Procedure: Evidence .......................... 22

## Appendices

A. Convention on the Civil Aspects of International Child Abduction ................ 26

B. International Child Abduction Remedies Act .................................................................. 35
C. Stipulation of Facts and Admissibility of Documents .................................................... 41
D. Decree of Dissolution of Marriage ................................................................................. 46

## I. Case Status

This matter is before the Court on a Petition for Return of a Child, brought pursuant to the Convention on the Civil Aspects of International Child Abduction (Convention) (October 24, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11) (The entire Convention is found at Appendix A, p. 26). The Supreme Court wrote in *Abbott v. Abbott*, 130 S. Ct. 1983, 1987 (2010), "The United States is a contracting state to the Convention." Congress passed a statute to implement the Convention, the International Child Abduction Remedies Act, 42 U.S.C. § 11601-11610 (ICARA). (ICARA is found at Appendix B, p. 35). In ICARA, Congress found: "The international abduction or wrongful retention of children is harmful to their well-being. Persons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention." 42 U.S.C. § 11601(a)(1) and (2).

Plaintiff, Ester Ellen Nelson, is the mother (Mother) of the minor child at the center of this case. Defendant, Joseph Petterle, is the child's father (Father). By this Petition, Mother seeks the return of her child to her custody.

## II. Facts

Mother and father married January 28, 1999 at Lake Tahoe, California. The child was born in 1999 at Reno, Nevada, and is now twelve years of age. (*See* Stipulation of Facts at Appendix C, p. 41).

The family lived in Sparks, Nevada until 2001, when they moved to Oceanside, California. In January, 2002, Mother and child moved to Gothenburg, Nebraska. Father did not

move to Nebraska. Mother and father separated when Mother moved to Nebraska in 2002. At all times since the child's birth, Mother has been child's primary custodian. (*See* Stipulation, Appendix C, ¶ 16, p. 44). Until Father retained the child in the United States on August 15, 2010, following a summer visit, the child had always lived with Mother.

While living in Nebraska, Mother commenced a proceeding for Legal Separation. Mother modified the Legal Separation into a proceeding for divorce. A Decree of Dissolution of Marriage was filed January 27, 2004 by the District Court of Lincoln County, Nebraska. The Decree of Dissolution awarded full legal custody of the child to Mother, with visitation to Father. (The Decree of Dissolution is found at Appendix D, p. 46). The Decree states in relevant part, "That the care, custody, and control of the minor child of the parties _____, d/o/b _____99, SSN _____, shall be awarded to Petitioner [Mother], with reasonable visitation reserved in the Respondent [Father.]" (page 2 of divorce decree). The Nebraska custody Decree has not been modified. Mother is the sole legal custodian of the child.

In 2007, Mother and child moved to Moscow, Idaho so Mother could attend the University of Idaho. While at the University, Mother earned credits toward an undergraduate degree.

In 2009, Mother received a scholarship to attend the University of Iceland. Mother has family in Iceland, including her grandmother, four brothers, and numerous aunts, uncles, and cousins. As a child, Mother resided briefly in Iceland with her mother. In July, 2009, Mother moved to Iceland to attend the University. At the time of the move, Mother abandoned Idaho as her home. Mother had no intent to return to Idaho, Nebraska, or California. Mother's primary purpose in moving to Iceland was to complete her university training in order to

improve her situation for herself and her child. When Mother moved to Iceland, she had not made a final decision to remain in Iceland after completing college. However, the possibility of remaining in Iceland permanently was an option from the beginning. The decision to remain in Iceland with her son (as well as Mother's other son), was formed as Mother settled into her new home.

When mother moved to Iceland in July, 2009, the child was on summer vacation with Father in Sacramento, California. The child flew home to Mother in Iceland in the second week of August, 2009. The child resided continuously with Mother in Iceland from the middle of August, 2009 until July 2, 2010. While living in Iceland, child attended school, made friends, socialized with his extended family, and acclimated to his new home.

Mother and father agreed that the child would spend the 2010 summer school vacation in Sacramento with Father. By agreement, the child was to fly to the United States on July 2, 2010, and return to Mother in Iceland on August 15, 2010. Pursuant to the agreement, on July 2, 1020, Mother put child on a plane to travel the United States for summer visitation with Father.

Father did not return the child to Mother on August 15, 2010 pursuant to the agreement. At no time did Mother consent to or acquiesce in her child's presence in Sacramento beyond August 15, 2010.

On August 9, 2010, Father, through counsel, filed an ex parte Petition for Custody and Protective Order in the Superior Court, County of Sacramento, Family Court. On August 9, 2010, the Honorable Peter J. McBrien signed an ex parte temporary order that Mother not remove the child from California.

Plaintiff's Trial Brief                                                                  5

Mother was unaware of the ex parte proceedings in State Court. On August 12, 2010, Mother called Father to finalize plans for the child's return to Mother on August 15. The child answered the phone, and while Mother was talking to her son, an email arrived from Father stating, "Hi—I'll cut to the chase: [Child] has made it clear, quite on his own, that he doesn't want to return to Iceland. He is adamant. For this, and for my own reasons, I have had the matter examined. At this time, the state of California has decided that no one is permitted to remove him from the state. Further information can be obtained from, and all questions regarding this can be directed to: Sean Gejerde . . . ."

Upon learning that Father would not return the child to Mother's custody, Mother contacted the Iceland Ministry of Justice and Human Rights. On August 20, 2010, Mother filed with the Ministry a Request for Return of Child Under the Convention. The Ministry in Iceland contacted the U.S. Department of State, which is the Central Authority in the United States for purposes of the Convention.

On October 14, 2010, Mother contacted the undersigned counsel to determine if counsel would represent her in the State Court custody proceeding. Following some discussion, counsel was retained. On November 16, 2010, Mother's attorney filed in State Court the following: (1) Motion to Quash Petition for Custody Based on Lack of Subject Matter Jurisdiction, and (2) Petition for Return of Child to Petitioner under the Convention.

On January 12, 2011, Judge McBrien of the Sacramento County Superior Court, Family Court, granted Mother's Motion to Quash Father's bid for custody because California has no subject matter jurisdiction regarding child custody.

Mother's Petition under the Convention for return of her child was set for hearing in

Superior Court on February 9, 2011. Before the matter could be heard in State Court, Father

removed the Petition to this Honorable Court on January 13, 2011.

### III. Governing Substantive Law

The Convention on the Civil Aspects of International Child Abduction entered into force

between the United States and Iceland on December 1, 1996.

The object of the Convention is "to secure the prompt return of children wrongfully

removed to or retained in any Contracting State." (Convention, Article 1(a)). The Supreme Court

explained in *Abbott v. Abbott*, 130 S. Ct. 1983, 1989 (2010): "The Convention was adopted in

1980 in response to the problem of international child abductions during domestic disputes.

The Convention seeks 'to secure the prompt return of children wrongfully removed or retained

. . . . The Convention's central operating feature is the return remedy. When a child under the

age of 16 has been wrongfully removed or retained, the country to which the child has been

brought must 'order the return of the child forthwith,' unless certain exceptions apply." In a

similar vein, the Ninth Circuit wrote in *Cuellar v. Joyce*, 596 F.3d 505, 508 (9th Cir. 2010), "The

Hague Convention seeks to deter parents from abducting their children across national borders

by limiting the main incentive for international abduction—the forum shopping of custody

disputes." The First Circuit added in *Charalmbous v. Charalambous*, 627 F.3d 462, 466 (1st Cir.

2010), "The Convention establishes a strong presumption favoring return of a wrongfully

removed child."

The instant case is one of wrongful retention. Father wrongfully retained the child in

Sacramento, California following the visit in the summer of 2010. Under the Convention,

retention of a child is wrongful when "it is in breach of custody rights attributed to a person . . . under the law of the State in which the child was habitually resident immediately before the . . . retention; and at the time of . . . retention those rights were actually exercised . . . ." (Convention, Article 3(a)). Under the Convention, rights of custody may arise by reason of a judicial decision. (Convention, Article 3). Mother has the right to full custody pursuant to the Nebraska divorce decree granted in 2004.

Article 12 of the Convention provides, "Where a child has been wrongfully . . . retained in terms of Article 3, and at the date of the commencement of the proceedings before the judicial . . . authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful . . . retention, the authority shall order the return of the child forthwith." ICARA defines "commencement of proceedings" as the date of filing of a Petition under the Convention. (42 U.S.C. § 11603(f)(3)). The wrongful retention in this case occurred on August 15, 2010, when Father refused to return child to Mother in Iceland. Mother filed her Petition for Return of Child in Sacramento County Superior Court on November 16, 2010, within the one year period.

Under the Convention, this Honorable Court does not examine underlying issues regarding child custody or the best interests of the child. As Congress declared in ICARA, "The Convention and [ICARA] empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." (42 U.S.C. § 11601(b)(4)). The Ninth Circuit explained in *Cuellar v. Joyce*, 596 F.3d 505, 508 (9th Cir. 2010), "A court that receives a petition under the Hague Convention may not resolve the question of who, as between the parents, is best suited to have custody of the child. With a few narrow

exceptions, the court must return the abducted child to its country of habitual residence so the courts of *that* country can determine custody." (emphasis in original). *See also, In re B. Del C.S.B.*, 559 F.3d 999, 1002 (9th Cir. 2009)(same).

### IV. Mother's Prima Facie Case for Return of Child

The Ninth Circuit's decision in *Mozes v. Mozez*, 239 F.3d 1067, 1070 (9th Cir. 2001) sets forth the elements of a prima facie case for return of a child under Article 3 of the Convention. The Ninth Circuit wrote: "A court applying this provision must therefore answer a series of four questions: (1) When did the removal or retention take place? (2) Immediately prior to the removal or retention, in which state was the child habitually resident? (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence? (4) Was the petitioner exercising those rights at the time of the removal or retention?"

According to the federal statute implementing the Convention, the petitioner, Mother, has the burden of proving a prima facie case by a preponderance of the evidence. (42 U.S.C. § 11603(e)(1)(A)).

### A.  The Wrongful Retention Occurred on August 15, 2010

The wrongful retention occurred on August 15, 2010, when Father refused to return the child to Mother in Iceland following the child's summer vacation with Father in Sacramento.

### B.  Immediately Prior to the Retention, the Child's Habitual Residence Was Iceland

Mother moved to Iceland in July, 2009 to attend the University of Iceland. When she moved to Iceland, she abandoned her previous home in Idaho. Mother took her modest worldly

possessions with her to Iceland. She did not maintain a residence in Idaho. She had no intention to return to Idaho. Nor did mother intend to return to Nebraska or California. In short, in July, 2009, Mother moved lock, stock, and barrel to Iceland, where she began a new life with her son.

In the second week of August, 2009, the child joined Mother in Iceland following a summer visit with Father in Sacramento. Mother and child settled into their new home in Iceland. At the start of the school year, Mother enrolled her child in school. The child attended school in Iceland the entire 2009-2010 school year.

Mother and child lived together in Iceland from August 2009 until July 2, 2010, when Mother put the child on a plane to travel to Sacramento for the prearranged summer visit with Father—a visit that by agreement was to end on August 15, 2010 with the child returned to Mother in Iceland.

Iceland was the child's habitual residence under the Convention. As mentioned earlier, the concept of habitual residence is key to the Convention. As the Ninth Circuit put it in *Mozes, supra*, "'Habitual residence' is the central—often outcome-determinative—concept on which the entire system is founded.'" (239 F.3d at 1072). Yet, neither the Convention or the federal statute implementing the Convention (ICARA) define "habitual residence." The drafters of the Convention intended judges to flesh out the meaning of "habitual residence" on a case by case basis.

The Ninth Circuit's decision in *Mozes, supra*, is a leading authority on the meaning of habitual residence. The *Mozes* Court wrote, "[C]ourts have been instructed to interpret the expression 'habitual residence' according to 'the ordinary and natural meaning of the two

words it contains, [as] a question of fact to be decided by reference to all the circumstances of any particular case.'" (239 F.3d at 1071). The trial court examines to totality of the circumstances to determine habitual residence.

The question of habitual residence is not a matter of counting the number of days a child lived in a particular place. Quoting a Canadian case, the Ninth Circuit observed in *Mozes*, "[I]t is 'not desirable, indeed it is not possible, to enter into any game of numbers on the duration required.'" (239 F.3d at 1074). The *Mozes* Court stated, "The absence of an objective temporal baseline however, requires that we pay close attention to subjective intent when evaluating someone's habitual residence." (*Id*). But whose "subjective intent"? The child's or the parents'? *Mozes* grappled with this question and concluded that it is primarily parental intent that controls where the child lives. The trial court searches for the parent's "settled purpose" to establish a new habitual residence.

When a child is living in an intact family, both parents have rights to custody, and the "settled intent" of both parents is key to determining habitual residence. The instant case is very different. Mother is the only custodial parent. The 2004 divorce awarded Mother sole custody of the child. The divorce did not grant any form of joint custody. Father has a right to visitation, not custody. Since the divorce in 2004, Mother has been the child's only custodial parent.  The child has always lived with mother, and since the parties separated in 2002, the child has lived *only* with Mother. In a case like this, involving a divorced parent with sole custody of lengthy duration, the "settled intent" of the custodial parent should be focus of the court's attention. As the Court wrote in *Mozes*, "[T]he intention or purpose which has to be taken into account is that of the person or persons entitled to fix the place of the child's

residence." (239 F.3d at 1076). It is Mother—the custodial parent—who is entitled to fix the child's residence.

Mother's intention was to move with her son to Iceland. When she moved to Iceland in 2009, Mother's immediate focus was her university studies. Upon arrival in Iceland, she had not planned the rest of her life. Mother had not made a decision to remain in Iceland for the long term. She was, however, considering staying in Iceland after college. It is clear that Mother abandoned her previous habitual residence in Idaho. As the Ninth Circuit wrote in *Mozes*, "[T]he first step toward acquiring a new habitual residence is forming a settled intention to abandon the one left behind. . . . [O]ne may effectively abandon a prior habitual residence without intending to occupy the next one for more than a limited period. " (239 F.3d at 1075). That is precisely what Mother did here. Moreover, Mother could acquire a habitual residence in Iceland without intending *on the day she arrived* to live permanently in Iceland. The *Mozes* Court observed, "Of course, one need not have this settled intention at the moment of departure; it could coalesce during the course of a stay abroad originally intended to be temporary. . . ." (239 F.3d at 1075).[1] That is what happened here. As Mother and child settled into their new home, Mother decided, "This will be our home for the future." As the child's custodial parent, Mother had every right to make that decision.  The *Mozes* Court noted that many courts have ruled "that a person can only have one habitual residence at a time under the Convetion." (239 F.3d at 1075 n. 17).

Although mere passage of time is not dispositive of "habitual residence," the amount of time is relevant. The *Mozes* court noted, "[H]ome isn't built in a day. It requires the passage of

---

[1] Accord Ruiz v. Tenorio, 392 F.3d 1247, 1252 (11th Cir. 2004)("It is not necessary to have this settled intention at the time of departure, as it could develop during the course of a stay originally intended to be temporary.").

'[a]n appreciable period of time, . . . one that is 'sufficient for acclimatization.'" (239 F.3d at 1078). In the instant case, Mother lived in Iceland more than a year when the wrongful retention occurred on August 15, 2010. The child lived in Iceland with his mother nearly a year—from mid August 2009 until July 2, 1010. Mother and child were acclimated in Iceland. They attended school, saw family and friends, and engaged in the simple routines of daily life in their new home. They were settled.

When a parent intends to remain in a new location, courts have found relatively short time frames suffiient to establish habitual residence. Thus, in *Feder v. Evans-Feder*, 63 F.3d 217, 224 (3d Cir. 1995), the Third Circuit ruled that a period just shy of six months was sufficient. In *Ryder v. Ryder,* 49 F.3d 369 (8th Cir. 1995), the Eighth Circuit found six months sufficient. In the English case *In re Bates*, No. CA 122-89, High Court of Justice, Family Division, Royal Court of Justice, United Kingdom (1989)(cited in *Feder v. Evans-Feder, supra*), the court ruled that a couple of months could suffice. In *Mozes, supra*, the Ninth Circuit considered a case in which both parents moved. The court wrote, "When the child moves to a new country accompanied by both parents, who take steps to set up a regular household together, the period need not be long." (239 F.3d at 1078). If the Ninth Circuit considered a case like this one—a single parent with full custody who moves and sets up a household for herself and her child—the Court would likely reach the same conclusion: "the period need not be long." But again, it is not the passage of time that is controlling; it is the intent of the custodial parent—in this case Mother— to establish a new home. As the Ninth Circuit put it in *Mozes*, "Habitual residence is intended to be a description of a factual state of affairs . . . . [C]ourts should find a change in habitual residence if 'the objective facts point unequivocally to a person's ordinary or habitual residence

being in a particular place.'" (239 F.3d at 1081). The facts of the instant case are clear: Mother and child settled in Iceland. Mother obtained Icelandic citizenship for herself and her son. Iceland became the child's habitual residence.

### C.  The Wrongful Retention Breached Mother's Rights of Custody

Article 3(a) of the Convention provides that the retention of a child is wrongful where it is in breach of rights of custody. As the child's sole legal custodian, Mother had the right to custody of her child at the time Father wrongfully refused to send the child home following summer visitation.

### D.  Mother was Exercising Her Right of Custody at the Time of the Wrongful Retention

Article 3(a) of the Convention states that the retention of a child is wrongful where a parent with custody rights—in this case Mother—was "actually" exercising those rights at the time of the retention. Courts construe the term "actually exercising custody rights" liberally in favor of the parent claiming wrongful retention. In *Bader v. Kramer*, 484 F.3d 666, 671 (4th Cir. 2007), the Fourth Circuit wrote, "[W]e find persuasive the nearly-universal approach taken by courts faced with the question of the exercise of custody rights. Accordingly, we will 'liberally find "exercise" [of custody rights] whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child.'" In *Friedrich v. Friedrich*, 78 F.3d 1060, 1066 (5th Cir. 2004), the Fifth Circuit wrote, "[A] person [who] has valid custody rights to a child under the law of the country of the child's habitual residence . . . cannot fail to 'exercise' those custody rights under the Hague Convention short of acts that constitute clear and unequivocal

abandonment of the child." Since the child's birth in 1999, there has never been a time when Mother ceased exercising her right to custody. Since Mother and Father separated in 2002, Mother has been a single parent with full responsibility for all aspects of the child's upbringing. Mother's full custodial responsibility and authority was cemented in place by the 2004 divorce that awarded Mother sole custody. Mother has always actually exercised her right to custody.

### E.  Conclusion Regarding Mother's Prima Facie Case

The facts of this case clearly show that Mother is entitled to the return of her child. Father's retention of the child in Sacramento is wrongful under the Convention. The evidence of wrongful retention far surpasses Mother's burden to establish a prima facie case by a preponderance of the evidence. The proper remedy in this case is an Order from this Court that the child be returned to his Mother forthwith.

The appropriateness of ordering the child returned to Mother in Iceland is reinforced by the fact that on January 12, 2011, the State Court ruled California has *no* subject matter jurisdiction to determine child custody. Even if there were no violation of the Convention, custody could not be litigated in California. Under the 2004 Nebraska divorce decree, Father has *no* right to custody of the child. Father has only a right to visitation. Father's retention of the child violates not only the Convention, but also the divorce decree, and fundamental principles of American child custody law. If Father wishes to seek modification of Mother's right to sole custody granted by the Nebraska divorce, he *must* do so in Iceland, the *only* jurisdiction that has subject matter jurisdiction over custody.[2]

### V. None of the Affirmative Defenses to Return Apply

---

[2] Nebraska no longer has subject matter jurisdiction over child custody because all parties and the child have moved away from Nebraska.

The Convention contains six exceptions—affirmative defenses—to return of a child who has been wrongfully detained in the contracting state. In *Asvesta v. Petroutsas*, 580 F.3d 1000, 1004 (9th Cir. 2009), the Ninth Circuit emphasized that "courts must narrowly interpret the exceptions lest they swallow the rule of return." The Third Circuit observed in *Tsai-Yi Yang v. Fu-Chiang* Tsui, 499 F.3d 259, 271 (3d Cir. 2007), that "even where a defense applies, the court has the discretion to order the child's return." The party raising a defense bears the burden of proof to establish the defense. (ICARA, 42 U.S.C. § 11603(e)(2)). As explained below, none of the defenses to return apply in this case.

### A.   Returning the Child to Mother Does Not Pose a Grave Risk to the Child

Article 13(b) of the Convention provides that a court is not bound to return a wrongfully retained child if the court finds "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child is an intolerable situation." There is not a scintilla of evidence that returning the child to the mother who has lovingly cared for him his entire life poses *any* risk to the child. If Father were to assert this exception, Father would have to prove it by clear and convincing evidence (ICARA, 42 U.S.C. § 11603(e)(2)(A)), something Father cannot begin to do.

### B.   Returning the Child to Mother Will Not Violate Fundamental Principles of American Law

Under Article 20 of the Convention, a court may decline to return a wrongfully retained child if returning the child would violate fundamental principles of American law regarding the protection of human rights and fundamental freedoms. Iceland is an advanced democracy. Mother is a loving, competent parent. Under no circumstances would return of the child to

Mother violate principles of American law. Just the opposite is true. Return to Mother will

vindicate American law. If father were to argue to the contrary, he would be required to prove

his assertion by clear and convincing evidence, something he can not do. (ICARA, 42 U.S.C. §

11603(e)(2)(A)).

### C.  Mother Filed Her Petition in a Timely Fashion

Article 12 of the Convention provides that where a child has been wrongfully retained, a

court may decline to return the child if the parent petitioning for return failed to file their

petition within one year. In this case, the wrongful retention occurred August 15, 2010. Mother

filed her Petition for Return of Child under the Convention on November 16, 2010, within the

one year period.

### D.  Mother was Actually Exercising Her Right to Custody at the Time of the Wrongful
### Retention

Article 13(a) of the Convention allows a court to decline to return a child if the parent

seeking return was not actually exercising parental custody of the child when the child was

wrongfully retained. At the time Father wrongfully retained the child, Mother was the child's

legal custodian and was actively exercising her right to custody on a daily basis.

### E.  Mother Did Not Consent to or Acquiesce in the Retention of her Child

Article 13(a) of the Convention allows a court to decline to return a child if the parent

seeking return consented to or acquiesced in the retention of the child. At no time has Mother

consented to or acquiesced in Father's unilateral and unlawful refusal to return the child to

Mother in Iceland.

### F.  This is Not a Case in Which the Child Should Decide Where to Live

Article 13 of the Convention allows a court to decline to return a wrongfully retained child if the court finds that the child does not want to return and the child "has attained an age and degree of maturity at which it is appropriate to take account of [the child's] views." The Fifth Circuit wrote in *England v. England*, 234 F.3d 268, 272 (5th Cir. 2000), that "the 'age and maturity' exception is to be applied narrowly." Father has the burden of proof to establish this defense by a preponderance of the evidence. (ICARA, 42 U.S.C. § 11603(e)(2)(B)).

The child is twelve. He loves his Mother and Father, and they love him. With two loving parents, the child undoubtedly wants to be with both parents—what child doesn't? Since, July, 2010, Father has had sole possession of the child and ample opportunity to persuade him that it is not a good idea to return to Mother in Iceland.

At twelve, the child is not sufficiently mature to make the momentous decision where to live. As the District Court Judge put it in *Haimdas v. Haimdas*, 720 F. Supp. 2d 183, 208 (E.D. N.Y. 2010), "The Court found him to be a remarkably intelligent, well-spoken and mature 12-year old—but he is still only 12." Indeed, it would be unfair to the child in this case—barely on the cusp of his teenage years—to impose on him the responsibility to pick between parents.

In child custody proceedings in California Superior Court, judges consider the wishes of children of sufficient age and capacity. (California Family Code § 3042(a)). Yet, it is not until a child turns 14 that a California family court judge is required to allow a child to be heard regarding custody. (*Id.* at 3042(c)). Moreover, family law judges realize that the wishes of young children should have little impact on the court's decision. In their treatise on California family law, judges William Hogoboom and Donand King write, "Generally, courts become more receptive as the child approaches teenage years . . . ." (William P. Hogoboom & Donald B. King,

*Family Law* § 7:325, p. 7.130 (2007)). The child in the instant case is twelve, but, as the District Court noted in *Haimdas, supra*, "he is only 12."

Even if the child were sufficiently mature for his opinion to count, this Court is not bound by his wishes.[3] The U.S. District Court for the Eastern District of New York explained in *Haimdas v. Haimdas*, 720 F. Supp. 2d 183 (E.D. N.Y. 2010):

> The fact that a sufficiently mature child objects to repatriation 'may be conclusive'; in other words, a district court can decline to order return of a wrongfully retained or removed child on that ground alone. However, it bears emphasis that the Convention merely calls for a court to 'take account of' a mature child's objection to return, not to accede to it automatically. Further, a court always retains discretion to order repatriation notwithstanding the applicability of any Hague Convention exception if that would best fulfill the purposes of the Convention; the discretionary aspect is particularly important with respect to the mature child exception 'because of the potential for undue influence by the person who allegedly wrongfully retained the child.' Such undue influence is not always calculated or intended by the custodial parent. 'A lengthy wrongful retention could enable the child to become comfortable in his or her new surroundings, which may create a desire to remain in his or her new home. . . .

---

[3] *See England v. England*, 234 F.3d 268, 272 (1st Cir. 2000)("That Karina has maintained her friendships with children in America, prefers America to Australia, and now enjoys a 'situation [that] has stabilized;' does not establish that she is mature enough for a court appropriately to consider her views on where she would prefer to live under the Hague Convention. Rather, these findings only establish that Karina prefers to remain in the United States and that some reasons support this preference.").

However, a finding of undue influence is not a prerequisite to a decision not to apply the mature child exception. . . .

Significantly, courts distinguish between a child's 'objection' to return, as referenced in the Hague Convention, 'and a child's wishes, as expressed in a custody case . . . . [T]he notion of 'objections' . . . is far stronger and more restrictive than that of 'wishes' in a custody case. A child's expression of a preference to remain in the United States rather than a particularized objection to repatriation may provide a basis for a court to find the mature child exception inapplicable. (720 F. Supp. 2d at 204-206).

The child has been in Sacramento since July 2, 2010. Father wrongfully retained the child from and after August 15, 2010. It would be surprising if the child had not formed an attachment to Sacramento during this period. But to allow the child to stay for that reason would be to reward the Father for his wrongdoing and to flout the purposes of the Convention. The Third Circuit addressed this issue in *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 280 (3d Cir. 2007), where the court wrote, "[T]he District Court determined that this was not an appropriate case in which to apply the [mature child] exception. The attachment Raeann had to Pittsburgh and her family there were created because of Tsui's wrongful retention of Raeann. . . . If the District Court applied the exception in this case, it would encourage parents to wrongfully retain a child for as long as possible. A lengthy wrongful retention could enable the child to become comfortable in his or her new surroundings, which may create a desire to remain in his or her new home. The application of the exception in this case would reward Tsui

for violating Yang's custody rights, and defeat the purposes of the Convention." The Third

Circuit's reasoning is on all fours with this case.

### G.  Conclusion Regarding Affirmative Defenses

None of the affirmative defenses to return apply in this case. Moreover, even if one of

the defenses is arguably applicable, the Court should return the child to Mother. As the Third

Circuit observed in *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 278 (3d Cir. 2007), "The

exceptions are construed narrowly so their application does not undermine 'the express

purposes of the Convention.' Additionally, even if the respondent meets his or her burden of

proving the affirmative defense, the court retains the discretion 'to order the return of the child

if it would further the aim of the Convention which is to provide for the return of a wrongfully

removed child.'" In the instant case, the policy of the Convention will be served by returning

the child to his Mother. Father should not be allowed to parley his wrongful retention into an

evisceration of Mother's legitimate rights.

### VI. Evidentiary Issues

Mother's testimony will be the foundation for her case. In addition to Mother's

testimony, Mother intends to offer a number of documents.

### A.  Authentication

Regarding authentication of documents, the federal statute implementing the

Convention (ICARA) provides at 42 U.S.C. § 11605, "When respect to any application to the

United States Central Authority, or any petition to a court under section 11603 of this title,

which seeks relief under the Convention, or any other documents or information included with

such application or petition or provided after such submission which relates to the application

or petition, as the case may be, no authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court." Pursuant to Section 11605, documentary evidence offered by the parties in this case is deemed authenticated.

### B.   Best Evidence Rule

All documents Mother offers will be duplicates or originals, satisfying the best evidence rule (Federal Rule of Evidence 1002).

### C.   Request for Judicial Notice

Mother intends to offer relevant court documents from state courts in California and Nebraska. Mother respectfully requests this Court to take judicial notice of the state court documents. Judicial notice is proper under Federal Rule of Evidence 201(b)(2). As explained by Wright and Graham, "Writers generally agree that courts can take judicial notice of court records under Rule 201(b)(2) . . . . [J]udicial records are a source of 'whose accuracy cannot reasonably be disputed.' . . . [S]ince the enactment of Rule 201 federal courts notice the records of any court, state or federal." Charles A. Wright & Kenneth W. Graham, *Federal Practice and Procedure: Evidence* § 5106.4, p. 228, 230 (2005).

### D.   The Nebraska Divorce Decree

Mother will offer the Nebraska divorce decree awarding Mother custody of the child. Attorneys for Mother and Father stipulated to admission divorce decree. (*See* Stipulation of Facts and Admissibility of Documents, Appendix C).

### E.   California State Court Documents

Mother will offer the following documents that were filed in this case in the Superior

Court for Sacramento County, Family Court, before the case was removed by Father to this

Court:

(1) Petitioner's [Father] Petition for Custody and accompanying Declaration under the

Uniform Child Custody Jurisdiction and Enforcement Act. This document is signed by Father and

his attorney and is admissible against father as a party admission (Federal Rule of Evidence

801(d)(2)(A) and (C)).

(2) Respondent's [Mother's] Motion to Quash Petition for Custody Based on Lack of

Subject Matter Jurisdiction and accompanying declaration. This document is admissible as a

response to Father's Petition for Custody under the rule of completeness (Federal Rule of

Evidence 106). Mother's Motion to Quash is not hearsay because it is a verbal act that has

independent legal significance.

(3) The Superior Court Judge's Order dismissing Father's Petition for Custody because

California has no subject matter jurisdiction over child custody. The Order of Dismissal is a

judicial act and is admissible under the verbal act doctrine—an act of independent legal

significance.

**F. The Child's Iceland Passport**

A duplicate of the child's Iceland passport was filed in state court with the Petition for

Return of Child. The parties stipulated to admission of the passport (*See* Appendix C).

**G. Email from Father to Mother Confirming Reservation for Child to Return to Mother**

**on August 15, 2010**

Plaintiff's Trial Brief                                                                                      23

On June 25, 2010, Father sent an email to Mother confirming that the child had a

reservation to return to Mother in Iceland on August 15, 2010. Father's email refers to an email

sent on June 25, 2010 to Father from Expedia confirming the child's reservation. Both emails

are admissible against father as party admissions. Father's own email is a personal admission

under Federal Rule of Evidence 801(d)(1)(A). The email to Father from Expedia is admissible

against Father as an adoptive admission, Rule 801(d)(1)(B), because father relied on the email

from Expedia.

### H.  Icelandic Documents Confirming that the Child Lives in Iceland with Mother

Mother will offer several documents from Iceland establishing that the Child lives in

Iceland. The following documents are public records admissible under the Public Records

Exception (Federal Rule of Evidence 803(8)) and/or as acts of independent legal significance.

### VII. Conclusion

Boiled down to the essentials, this case is relatively simple. Mother has been the child's

primary custodian since the child's birth. When Mother and Father separated in 2002, Mother

became a single parent with day-to-day responsibility for her child. Since the 2004 divorce,

Mother has been the only custodial parent, and she has exercised her right as custodial parent

continuously. On August 15, 2010, Father unilaterally retained the child in Sacramento in clear

violation of the Convention and California Law. The United States Supreme Court observed in

*Abbott v. Abbott*, 130 S. Ct. 1983, 1989 (2010), "The Convention was adopted in 1980 in

response to the problem of international child abductions during domestic disputes. The

Convention seeks 'to secure the prompt return of children wrongfully removed or retained . . .

.'" Father's retention of the child is clearly wrongful. The proper remedy under the Convention is an Order from this Honorable Court restoring the child to Mother's lawful custody forthwith.

Respectfully submitted,

/s/ John E.B. Myers

Attorney for Plaintiff

Dated: 20 February 2011

APPENDIX A

## 28. CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION

*(Concluded 25 October 1980)*

The States signatory to the present Convention,

Firmly convinced that the interests of children are of paramount importance in matters relating to their custody,

Desiring to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access,

Have resolved to conclude a Convention to this effect, and have agreed upon the following provisions –

CHAPTER I – SCOPE OF THE CONVENTION

Article 1

The objects of the present Convention are –

a)   to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

b)   to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

Article 2

Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.

Article 3

The removal or the retention of a child is to be considered wrongful where –

a)   it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b)   at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph *a)* above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

Article 4

The Convention shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years.

Article 5

For the purposes of this Convention –

a)   "rights of custody" shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;

b)   "rights of access" shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.


CHAPTER II – CENTRAL AUTHORITIES


### Article 6

A Contracting State shall designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities.

Federal States, States with more than one system of law or States having autonomous territorial organisations shall be free to appoint more than one Central Authority and to specify the territorial extent of their powers. Where a State has appointed more than one Central Authority, it shall designate the Central Authority to which applications may be addressed for transmission to the appropriate Central Authority within that State.


### Article 7

Central Authorities shall co-operate with each other and promote co-operation amongst the competent authorities in their respective States to secure the prompt return of children and to achieve the other objects of this Convention.

In particular, either directly or through any intermediary, they shall take all appropriate measures –

a)   to discover the whereabouts of a child who has been wrongfully removed or retained;

b)   to prevent further harm to the child or prejudice to interested parties by taking or causing to be taken provisional measures;

c)   to secure the voluntary return of the child or to bring about an amicable resolution of the issues;

d)   to exchange, where desirable, information relating to the social background of the child;

e)   to provide information of a general character as to the law of their State in connection with the application of the Convention;

f)   to initiate or facilitate the institution of judicial or administrative proceedings with a view to obtaining the return of the child and, in a proper case, to make arrangements for organising or securing the effective exercise of rights of access;

g)   where the circumstances so require, to provide or facilitate the provision of legal aid and advice, including the participation of legal counsel and advisers;

h)   to provide such administrative arrangements as may be necessary and appropriate to secure the safe return of the child;

i)   to keep each other informed with respect to the operation of this Convention and, as far as possible, to eliminate any obstacles to its application.


CHAPTER III – RETURN OF CHILDREN


### Article 8

Any person, institution or other body claiming that a child has been removed or retained in breach of custody rights may apply either to the Central Authority of the child's habitual residence or to the Central Authority of any other Contracting State for assistance in securing the return of the child.

The application shall contain –

a)   information concerning the identity of the applicant, of the child and of the person alleged to have removed or retained the child;

b)   where available, the date of birth of the child;

c)   the grounds on which the applicant's claim for return of the child is based;

d)   all available information relating to the whereabouts of the child and the identity of the person with whom the child is presumed to be.

The application may be accompanied or supplemented by –

e)      an authenticated copy of any relevant decision or agreement;

f)      a certificate or an affidavit emanating from a Central Authority, or other competent authority of the State of the child's habitual residence, or from a qualified person, concerning the relevant law of that State;

g)      any other relevant document.

## Article 9

If the Central Authority which receives an application referred to in Article 8 has reason to believe that the child is in another Contracting State, it shall directly and without delay transmit the application to the Central Authority of that Contracting State and inform the requesting Central Authority, or the applicant, as the case may be.

## Article 10

The Central Authority of the State where the child is shall take or cause to be taken all appropriate measures in order to obtain the voluntary return of the child.

## Article 11

The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.

If the judicial or administrative authority concerned has not reached a decision within six weeks from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay. If a reply is received by the Central Authority of the requested State, that Authority shall transmit the reply to the Central Authority of the requesting State, or to the applicant, as the case may be.

## Article 12

Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

Where the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child.

## Article 13

Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that –

a)      the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or

b)      there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.

In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

## Article 14

In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognised or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.

## Article 15

The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.

## Article 16

After receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention or unless an application under this Convention is not lodged within a reasonable time following receipt of the notice.

## Article 17

The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention.

## Article 18

The provisions of this Chapter do not limit the power of a judicial or administrative authority to order the return of the child at any time.

## Article 19

A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.

Article 20

The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

CHAPTER IV — RIGHTS OF ACCESS

Article 21

An application to make arrangements for organising or securing the effective exercise of rights of access may be presented to the Central Authorities of the Contracting States in the same way as an application for the return of a child.

The Central Authorities are bound by the obligations of co-operation which are set forth in Article 7 to promote the peaceful enjoyment of access rights and the fulfilment of any conditions to which the exercise of those rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights.

The Central Authorities, either directly or through intermediaries, may initiate or assist in the institution of proceedings with a view to organising or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject.

CHAPTER V — GENERAL PROVISIONS

Article 22

No security, bond or deposit, however described, shall be required to guarantee the payment of costs and expenses in the judicial or administrative proceedings falling within the scope of this Convention.

Article 23

No legalisation or similar formality may be required in the context of this Convention.

Article 24

Any application, communication or other document sent to the Central Authority of the requested State shall be in the original language, and shall be accompanied by a translation into the official language or one of the official languages of the requested State or, where that is not feasible, a translation into French or English.

However, a Contracting State may, by making a reservation in accordance with Article 42, object to the use of either French or English, but not both, in any application, communication or other document sent to its Central Authority.

Article 25

Nationals of the Contracting States and persons who are habitually resident within those States shall be entitled in matters concerned with the application of this Convention to legal aid and advice in any other Contracting State on the same conditions as if they themselves were nationals of and habitually resident in that State.

30

Article 26

Each Central Authority shall bear its own costs in applying this Convention.
Central Authorities and other public services of Contracting States shall not impose any charges in relation to applications submitted under this Convention. In particular, they may not require any payment from the applicant towards the costs and expenses of the proceedings or, where applicable, those arising from the participation of legal counsel or advisers. However, they may require the payment of the expenses incurred or to be incurred in implementing the return of the child.
However, a Contracting State may, by making a reservation in accordance with Article 42, declare that it shall not be bound to assume any costs referred to in the preceding paragraph resulting from the participation of legal counsel or advisers or from court proceedings, except insofar as those costs may be covered by its system of legal aid and advice.
Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Article 27

When it is manifest that the requirements of this Convention are not fulfilled or that the application is otherwise not well founded, a Central Authority is not bound to accept the application. In that case, the Central Authority shall forthwith inform the applicant or the Central Authority through which the application was submitted, as the case may be, of its reasons.

Article 28

A Central Authority may require that the application be accompanied by a written authorisation empowering it to act on behalf of the applicant, or to designate a representative so to act.

Article 29

This Convention shall not preclude any person, institution or body who claims that there has been a breach of custody or access rights within the meaning of Article 3 or 21 from applying directly to the judicial or administrative authorities of a Contracting State, whether or not under the provisions of this Convention.

Article 30

Any application submitted to the Central Authorities or directly to the judicial or administrative authorities of a Contracting State in accordance with the terms of this Convention, together with documents and any other information appended thereto or provided by a Central Authority, shall be admissible in the courts or administrative authorities of the Contracting States.

Article 31

In relation to a State which in matters of custody of children has two or more systems of law applicable in different territorial units –
a)      any reference to habitual residence in that State shall be construed as referring to habitual residence in a territorial unit of that State;
b)      any reference to the law of the State of habitual residence shall be construed as referring to the law of the territorial unit in that State where the child habitually resides.

31

### Article 32

In relation to a State which in matters of custody of children has two or more systems of law applicable to different categories of persons, any reference to the law of that State shall be construed as referring to the legal system specified by the law of that State.

### Article 33

A State within which different territorial units have their own rules of law in respect of custody of children shall not be bound to apply this Convention where a State with a unified system of law would not be bound to do so.

### Article 34

This Convention shall take priority in matters within its scope over the *Convention of 5 October 1961 concerning the powers of authorities and the law applicable in respect of the protection of minors*, as between Parties to both Conventions. Otherwise the present Convention shall not restrict the application of an international instrument in force between the State of origin and the State addressed or other law of the State addressed for the purposes of obtaining the return of a child who has been wrongfully removed or retained or of organising access rights.

### Article 35

This Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States.
Where a declaration has been made under Article 39 or 40, the reference in the preceding paragraph to a Contracting State shall be taken to refer to the territorial unit or units in relation to which this Convention applies.

### Article 36

Nothing in this Convention shall prevent two or more Contracting States, in order to limit the restrictions to which the return of the child may be subject, from agreeing among themselves to derogate from any provisions of this Convention which may imply such a restriction.

#### CHAPTER VI – FINAL CLAUSES

### Article 37

The Convention shall be open for signature by the States which were Members of the Hague Conference on Private International Law at the time of its Fourteenth Session.
It shall be ratified, accepted or approved and the instruments of ratification, acceptance or approval shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

### Article 38

Any other State may accede to the Convention.
The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.
The Convention shall enter into force for a State acceding to it on the first day of the third calendar month after the deposit of its instrument of accession.

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such a declaration will also have to be made by any Member State ratifying, accepting or approving the Convention after an accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Kingdom of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.

### Article 39

Any State may, at the time of signature, ratification, acceptance, approval or accession, declare that the Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect at the time the Convention enters into force for that State.

Such declaration, as well as any subsequent extension, shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

### Article 40

If a Contracting State has two or more territorial units in which different systems of law are applicable in relation to matters dealt with in this Convention, it may at the time of signature, ratification, acceptance, approval or accession declare that this Convention shall extend to all its territorial units or only to one or more of them and may modify this declaration by submitting another declaration at any time.

Any such declaration shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands and shall state expressly the territorial units to which the Convention applies.

### Article 41

Where a Contracting State has a system of government under which executive, judicial and legislative powers are distributed between central and other authorities within that State, its signature or ratification, acceptance or approval of, or accession to this Convention, or its making of any declaration in terms of Article 40 shall carry no implication as to the internal distribution of powers within that State.

### Article 42

Any State may, not later than the time of ratification, acceptance, approval or accession, or at the time of making a declaration in terms of Article 39 or 40, make one or both of the reservations provided for in Article 24 and Article 26, third paragraph. No other reservation shall be permitted.

Any State may at any time withdraw a reservation it has made. The withdrawal shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

The reservation shall cease to have effect on the first day of the third calendar month after the notification referred to in the preceding paragraph.

### Article 43

The Convention shall enter into force on the first day of the third calendar month after the deposit of the third instrument of ratification, acceptance, approval or accession referred to in Articles 37 and 38.

Thereafter the Convention shall enter into force –
(1)    for each State ratifying, accepting, approving or acceding to it subsequently, on the first day of the third calendar month after the deposit of its instrument of ratification, acceptance, approval or accession;
(2)    for any territory or territorial unit to which the Convention has been extended in conformity with Article 39 or 40, on the first day of the third calendar month after the notification referred to in that Article.


## Article 44

The Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 43 even for States which subsequently have ratified, accepted, approved it or acceded to it.
If there has been no denunciation, it shall be renewed tacitly every five years.
Any denunciation shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands at least six months before the expiry of the five year period. It may be limited to certain of the territories or territorial units to which the Convention applies.
The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.


## Article 45

The Ministry of Foreign Affairs of the Kingdom of the Netherlands shall notify the States Members of the Conference, and the States which have acceded in accordance with Article 38, of the following –
(1)    the signatures and ratifications, acceptances and approvals referred to in Article 37;
(2)    the accessions referred to in Article 38;
(3)    the date on which the Convention enters into force in accordance with Article 43;
(4)    the extensions referred to in Article 39;
(5)    the declarations referred to in Articles 38 and 40;
(6)    the reservations referred to in Article 24 and Article 26, third paragraph, and the withdrawals referred to in Article 42;
(7)    the denunciations referred to in Article 44.


In witness whereof the undersigned, being duly authorised thereto, have signed this Convention.

Done at The Hague, on the 25th day of October, 1980, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Kingdom of the Netherlands, and of which a certified copy shall be sent, through diplomatic channels, to each of the States Members of the Hague Conference on Private International Law at the date of its Fourteenth Session.

Appendix B

**Public Law 100-300**
**100th Congress**
**[H.R. 3971, 29 Apr 1988]**

**42 USC 11601 et seq**

An Act

# INTERNATIONAL CHILD ABDUCTION REMEDIES ACT (ICARA)

To establish procedures to implement the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

SECTION 1.  SHORT TITLE.

This Act may be cited as the "International Child Abduction Remedies Act."

SECTION 2.  FINDINGS AND DECLARATIONS [42 USC 116011]
Findings.-The Congress makes the following findings:
The international abduction or wrongful retention of children is harmful to their well-being.
Persons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention.
International abductions and intentions of children are increasing, and only concerted cooperation pursuant to an international agreement can effectively combat this problem.

The Convention on the Civil Aspects of International Child Abduction, done at The Hague, on October 25, 1980, establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained, as well as for securing the exercise of visitation rights. Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies. The Convention provides a sound treaty framework to help resolve the problem of international abduction and retention of children and will deter such wrongful removals and retentions.

(b) DECLARATIONS. – The Congress makes the following declarations:
(1) It is the purpose of this Act to establish procedures for the implementation of the Convention in the United States.
(2) The provisions of this Act are in addition to and not in lieu of the provisions of the Convention.
(3) In enacting this Act the Congress recognizes-
(A) the international character of the Convention; and
(B) the need for uniform international interpretation of the Convention.
(4) The Convention and this Act empower courts in the United States to determine only rights under

35

the Convention and not the merits of any underlying child custody claims.

## SECTION 3. DEFINITIONS. [42 USC 11602]

For the purposes of this Act-

(1) the term "applicant" means any person who, pursuant to the Convention, files an application with the United States Central Authority or a Central Authority of any other party to the Convention for the return of a child alleged to have been wrongfully removed or retained or for arrangements for organizing or securing the effective exercise of rights of access pursuant to the Convention;

(2) the term "Convention" means the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980;

(3) the term "Parent Locator Service" means the service established by the Secretary of Health and Human Services under section 453 of the Social Security Act (42 U.S.C. 653);

(4) the term "Petitioner" means any person who, in accordance with this Act, files a petition in court seeking relief under the Convention;

(5) the term "person" includes any individual, institution, or other legal entity or other legal entity or body;

(6) the term "respondent" means any person against whose interests a petition is filed in court, in accordance with this Act, which seeks relief under the Convention;

(7) the term "rights of access" means visitation rights;

(8) the term "State" means any of the several States, the District of Columbia, and any commonwealth, territory, or possession of th6 United States; and

(9) the term "United States Central Authority" means the agency of the Federal Government designated by the President under section 7(a).

## SECTION 4. JUDICIAL REMEDIES. [42 USC 11603]

(a) JURISDICTION OF THE COURTS.-The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention

(b) PETITIONS.-Any person seeking to initiate judicial proceedings under the Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by filing a Petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed.

(c) NOTICE-.-Notice of an action brought under subsection (b) shall be given in accordance with the applicable law governing notice in interstate child custody proceedings.

(d) DETERMINATON OF CASE.-The court in which an action is brought under subsection (b) shall decide the case in accordance with the Convention.

(e) BURDENS OF PROOF.-(1) A petitioner in an action brought under subsection (b) shall establish by a preponderance of the evidence-

(A) in the case of an action for the return of a child, that the child has been wrongfully removed or retained within the meaning of the Convention; and

(B) in the case of an action for arrangements for organizing or securing the effective exercise of rights of access, that the petitioner has such rights.

(2) In the case of an action for the return of a child, a respondent who opposes the return of the child has the burden of establishing-

(A) by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Convention applies; and

(B) by a preponderance of the evidence that any other exception set forth in article 12 or 13 of the Convention applies.

(f) APPLICATION OF THE CONVENTION—For purposes of any action brought under this Act-

(1) the term "authorities", as used in article 15 of the Convention to refer to the authorities of the state of the habitual residence of a child, includes courts and appropriate government agencies;

(2) the terms "wrongful removal or retention" and "wrongfully removed or retained", as used in the Convention, include a removal or retention of a child before the entry of a custody order regarding that child; and

(3) the term "commencement of proceedings", as used in article 12 of the Convention, means with respect to the return of a child located in the United States, the filing of a petition in accordance with subsection (b) of this section.

(g) FULL FAITH AND CREDIT.-Full faith and credit shall be accorded by the courts of the States and the courts of the United States to the judgment of any other such court ordering or denying the return of a child, pursuant to the Convention, in an action brought under this Act.

(h) REMEDIES UNDER THE CONVENTION NOT EXCLUSIVE.-The remedies established by the Convention and this Act shall be in addition to remedies available under other laws or international agreements.

## SECTION 5. PROVISIONAL REMEDIES. [42 USC 11604]

(a) AUTHORITY OF COURTS.-In furtherance of the objectives of article 7(b) and other provisions of the Convention, and subject to the provisions of subsection (b) of this section, any court exercising jurisdiction of an action brought under section 4(b) of this Act may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition.

(b) LIMITATION ON AUTHORITY.-No court exercising jurisdiction of an action brought under section 4(b) may, under subsection (a) of this section, order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied.

## SECTION 6. ADMISSIBILITY OF DOCUMEMTS. [42 USC 11605]

With respect to any application to the United States Central Authority, or any petition to a court under section 4, which seeks relief under the Convention, or any other documents or information included with such application or petition or provided after such submission which relates to the application or petition, as the case may be, no authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court

**SECTION. 7. UNITED STATES CENTRAL AUTHORITY. [42 USC 11606]**

(a) DESIGNAITON.-The President shall designate a Federal agency to serve as the Central Authority for the United States under the Convention.

(b) FUNCTIONS.-The functions of the United States Central Authority are those ascribed to the Central Authority by the Convention and this Act.

(c) REGULATORY AUTHORITY.-Me United States Central Authority is authorized to issue such regulations as may be necessary to carry out its functions under the Convention and this Act.

(d) OBTAINING INFORMAITON FROM PARENT LOCATOR SERVICE. The United States Central Authority may, to the extent authorized by the Social Security Act, obtain information from the Parent Locator Service.

**SECTION 8.  COSTS AND FEES. [42 USC 11607]**

(a) ADMINISTRATIVE COSTS. -No department, agency, or instrumentality of the Federal Government or of any State or local government may impose on an applicant any fee in relation to the administrative processing of applications submitted under the Convention.

(b) COSTS INCURRED IN CIVIL ACTIONS.-(1) Petitioners may be required to bear the costs of legal counsel or advisors, court costs incurred in connection with their petitions, and travel costs for the return of the child involved and any accompanying persons, except as provided in paragraphs (2) and (3).

(2) Subject to paragraph (3), legal fees or court costs- incurred in connection with an action brought under section 4 shall be borne by the petitioner unless they are covered by payments from Federal State, or local legal assistance or other programs.

(3) Any court ordering the return of a child pursuant to an action brought under section 4 shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of -the child, unless the respondent establishes that such order would be clearly inappropriate.

**SECTION. 9. COLLECTION, MAINTENANCE, AND DISSEMINATION OF INFORMATION. [42 USC 11608]**

(a) IN GENERAL.-In performing its functions under the Convention, the United States Central Authority may, under such conditions as the Central Authority prescribes by regulation, but subject to subsection (c), receive from or transmit to any department, agency, or instrumentality of the Federal Government or of any State or foreign government, and receive from or transmit to any applicant, petitioner, or respondent, information necessary to locate a child or for the purpose of otherwise implementing the Convention with respect to a child, except that the United States Central Authority-

may receive such information from a Federal or State department, agency, or instrumentality only pursuant to applicable Federal and State statutes; and

(2) may transmit any information received under this subsection notwithstanding any provision of law

other than this Act.

(b) REQUESTS FOR INFORMATION.-Requests for information under this section shall be submitted in such manner and form as the United States Central Authority may prescribe by regulation and shall be accompanied or supported by such documents as the United States Central Authority may require.

(c) RESPONSIBILITY OF GOVERNMENT ENTITIES.-Whenever any department, agency, or instrumental of the United States or of any State receives a request from the United States Central Authority for information authorized to be provided to such Central Authority under subsection (a), the head of such department, agency, or instrumentality shall promptly cause a search to be made of the files and records maintained by such department, agency, or instrumentality in order to determine whether the information requested is contained in any such files or records. If such search disclose the information requested, the head of such department, agency, or instrumentality shall immediately transmit such information to the United States Central Authority, except that any such information the disclosure of which-

(1) would adversely affect the national security interests of the United States or the law enforcement interests of United States or of any State; or

(2) would be prohibited by section 9 of title 13, United States enforcement Code; shall not be transmitted to the Central Authority. The head of such department, agency, or instrumentality shall, immediately upon completion of the requested search, notify the Central Authority of the results of the search, and whether an exception set forth in paragraph (1) or (2) applies. In the event that the United States Central Authority receives information and the appropriate Federal or State department, agency, or instrumentality thereafter notifies the Central Authority that an exception set forth in paragraph (1) or (2) applies to that information, the Central Authority may not disclose that information under subsection (a).

(d) INFORMATION AVAILABLE FROM PARENT LOCATOR SERVICE. -To the extent that information which the United States Central Authority is authorized to obtain under the provisions of subsection (c) can be obtained through the Parent Locator Service, the United States Central Authority shall first seek to obtain such information from the Parent Locator Service, before requesting such information directly under the provisions of subsection (c) of this section.

(e) RECOPDKEEPING.-The United States Central Authority shall maintain appropriate records concerning its activities and the disposition of cases brought to its attention.

## SECTION 10. INTERAGENCY COORDINATING GROUP. [42 USC 11609]

The Secretary of State, the Secretary of Health and Human Services, and the Attorney General shall designate Federal employees and may, from time to time, designate private citizens to serve on an interagency coordinating group to monitor the operation of the Convention and to provide advice on its implementation to the United States Central Authority and other Federal agencies. This group shall meet from time to time at the request of the United States Central Authority. The agency in which the United States Central Authority is located is authorized to reimburse such private citizens for travel and other expenses incurred in participating at meetings of the interagency coordinating group at rates not to exceed those authorized under subchapter 1 of chapter 57 of title 5, United States Code, for employees of agencies.

**SECTION 11. AGREEMENT FOR USE OF PARENT LOCATOR SERVICE IN DETERMINING WHEREABOUTS OF PARENT OR CHILD.**

Section 4.63 of the Social Security Act (42-U.S.C. 663) is amended-

(1) by striking "under this section" in subsection (b) and inserting "under subsection (a)";

(2) by striking "under this section" where it first appears in subsection (c) and inserting "under subsection (a), (b), or (c)"; and

(3) by adding at the end the following new subsection:

"(e) The Secretary shall enter into an agreement with the Central Authority designated by the President in accordance with section 7 of the International Child Abduction Remedies Act, under which the services of the Parent Locator Service established under section 453 shall be made available to such Central Authority upon its request for the purpose of locating any parent or child on behalf of an applicant to such Central Authority within the meaning of section 3(l) of that Act.  The Parent Locator Service shall charge no fees for services requested pursuant to this subsection."


**SECTION. 12.  AUTHORIZATION OF APPROPRIATIONS [42 USC 11610]**

There are authorized to be appropriated for each fiscal year such sums as may be necessary to carry out the purposes of the Convention and this Act.

Approved April 29, 1988.

LEGISLATIVE MSTORY-H.R. 3971:

HOUSE REPORTS: No. 100-525 (Comm. on the Judiciary).

CONGRESSIONAL RECORD, Vol. 134 (1988):

Mar. 28, considered and passed House.

Apr. 12, considered and passed Senate, amended.

Apr. 25, House concurred in Senate amendment.

Appendix C

John E.B. Myers
State Bar No. 91300
3200 5th Ave.
Sacramento, CA 95817
Telephone: 916-739-7176
FAX: 916-739-7272
jmyers@pacific.edu

Attorney for Plaintiff

Sean Gjerde
State Bar No. 217467
8880 Elk Grove Blvd., Suite A
Elk Grove, CA 95624
Telephone: 916-483-3040

Attorney for Defendant

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ESTER ELLEN NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 2:11-CV-00140-GEB-JFM |
| | ) | |
| v. | ) | Stipulation of Facts and Admissibility |
| | ) | of Documents |
| | ) | |
| | ) | |
| JOSEPH PETTERLE, | ) | |
| | ) | |
| Defendant. | ) | |

COME NOW the parties, Ester Ellen Nelson, Plaintiff, and Joseph Petterle, Defendant, by and through the attorneys, and agree and stipulate as follows:

**Stipulated Facts**

41

1       1. Ester Ellen Nelson (Mother) is the mother of the minor child involved in this matter

2  (Child).

3

4       2. Joseph Petterle (Father) is the child's father.

5

6       3. Mother and Father were married January 28, 1999, at Lake Tahoe, California.

7

8       4. The child was born _____, 1999, at Reno, Nevada.

9

10       5. Father, Mother, and Child lived together in Sparks, Nevada until 2001, when the

11  family moved to Oceanside, California.

12

13       6. In January, 2002, Mother and Child moved to Gothenburg, Nebraska. Father did not

14  move to Nebraska. Father helped with the move. Father and Mother separated when Mother and

15  Child moved to Nebraska in 2002.

16

17       7. While living in Nebraska, Mother commenced a proceeding for Legal Separation.

18  Mother modified the Legal Separation proceeding to a divorce proceeding under Nebraska law.

19  A Decree of Dissolution of Marriage was filed January 27, 2004 by the District Court of Lincoln

20  County, Nebraska. The Decree of Dissolution granted Mother full custody of Child. The Decree

21  granted Father visitation and ordered Father to pay child support.

22

23       8. In 2007, Mother and Child moved to Moscow, Idaho so Mother could attend the

24  University of Idaho. While at the University of Idaho, Mother earned credits toward a Bachelor

25  of Fine Arts degree.

26

27       9. In 2009, Mother was awarded a scholarship to attend the University of Iceland. Mother

28  has family in Iceland, including her grandmother, four older brothers, and numerous aunts,

2

uncles, and cousins. As a child, Mother resided briefly in Iceland with her mother. In July, 2009, Mother moved to Iceland to attend the University. Since July 14, 2009, Mother's address in Iceland has been Graenasbraut 1221-3A, Reykjanesbaer, Iceland.

10. When Mother moved to Iceland in July, 2009, Child was on summer vacation with Father in Sacramento, California. Child flew to Iceland to be reunited with Mother during the second week of August, 2009.

11. Child resided with Mother at their home in Iceland from the middle of August, 2009 until July 2, 1010.

12. On July 2, 2009, child flew to California for a visit with Father. Father did not return Child to Mother. Since August 15, 2010, Father has retained Child in Sacramento, California.

13. On August 9, 2010, Father filed an ex parte Petition for Custody of Child in the Superior Court, County of Sacramento, Family Court Division. In his Petition, Father filed a declaration under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) asserting that the State of California had jurisdiction regarding custody under the UCCJEA. The Honorable Peter J. McBrien of the Superior Court approved Father's Petition.

14. On August 20, 2010, Father's attorney sent the following email message to Mother: "Ms. Nelson: I represent your ex-husband in the matter here in California. There are currently orders in place for the child not to be removed from this state. Since Iceland is a member of the Hague convention I cannot properly serve you until I have complied with the Hague convention rules, which include a translation into Icelandic, format to A4 paper, proper notations, and service by proper means in Iceland through counsel there. This is in process and is expected to take about 3-6 months to complete. At that time you will be served. If you wish to waive your rights to the Hague convention treaty then that is your choice. Sean Gjerde."

43

3

1

2      15. After learning that Father did not intend to return Child to her custody, Mother

3  contacted the Iceland Ministry of Justice and Human Rights. On August 20, 2010, Mother filed

4  with the Ministry a Request for Return of Child under The 1980 Hague Convention on the Civil

5  Aspects of International Child Abduction. The Ministry in Iceland contacted the U.S.

6  Department of State, which is the Central Authority in the United States for purposes of the

7  Hague Convention.

8

9      16. Since Child was born, Mother has at all times been his primary custodian. Since

10 Child's parents separated in 2002, Mother has been Child's full time custodial parent. Father has

11 visited Child during some summers, and one Christmas. In the divorce, Mother was granted full

12 custody of Child.

13

14     17. On November 16, 2010, Mother filed in the California State Superior Court for

15 Sacramento County, Family Court Division, her Verified Petition for Return of Child to

16 Petitioner and Petition for Immediate Issuance of Show Cause Order to Respondent.

17

18     18. On January 13, 2011, Father removed Mother's pending Petition for Return of Child

19 from State Court to Federal Court.

20

21                    Stipulation Regarding Admissibility of Documents

22

23      The parties stipulate to the authentication and admissibility at trial of the following

24 documents: (1) Father's email to Mother dated August 20, 2010 informing Mother of the custody

25 petition in state court; (2) Mother's petition under the Hague Convention and all supporting

26 documents; (3) Father's declaration dated December 11, 2010; (4) Child's birth certificate; (5)

27 the decree of dissolution of marriage from 2004; (6) copies of all documents filed pursuant to the

28

                                        44

4

1  Convention, including Mother's petition to the Icelandic Ministry of Justice and Human Rights,

2  and all relevant documents from the U.S. State Department.

3

4  DATED 2/16/11                    /s/ John E.B. Myers
                                    Attorney for Plaintiff

5

6  DATED 2 -15-11                   /s/ Sean Gjerde
                                    Attorney for Defendant.

7

8

9                                  IT IS SO ORDERED

10                                 _____

11                                 JUDGE

12                                 DATE: _____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          45

5

Appendix D

## IN THE DISTRICT COURT OF LINCOLN COUNTY, NEBRASKA

| | | |
|---|---|---|
| ESTER ELLEN PETTERLE,<br>SSN 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, | ) | CASE NO CI02-547 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSEPH S.  PETTERLE,<br>SSN 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, | ) | |
| | ) | |
| Respondent. | ) | |

**FILED**
**COPY**
JAN 2 7 2004

*[signature]*
CLERK OF DISTRICT COURT

### DECREE OF DISSOLUTION

NOW ON THIS 27th day of January, 2004, this matter comes for trial.  The Petitioner is present and represented by her attorney, Michael E. Piccolo.  The Respondent is present and represented by his attorney, Jeffrey M.  Wightman.

Opening statements are waived. The Court is advised that the parties have entered into a written Settlement Agreement, which is filed with the Court.  The Petitioner is sworn and testifies.  Petitioner rests.  Respondent rests.  Closing arguments are waived and the matter is submitted to the Court.

The Court, being duly advised, finds as follows:

1.     That the Petitioner has been for at least one year prior to the commencement of this action a  resident of Lincoln County, Nebraska.

2.     That the Court has jurisdiction of the parties and of the subject matter, and that more than 60 days has passed since the service of process.

3.     That neither party is a member of the Armed Forces of the United States or its allies within the meaning of the Soldiers and Sailors Civil Relief of 1940.

1

4.    That neither party is a party to any other pending action for divorce, separation or dissolution of marriage.

5.    That every effort to effect reconciliation has been made, without success, and the marriage of the parties  is  irretrievably broken and should be dissolved and terminated.

6.    That the parties' written settlement agreement is not unconscionable and is fair and equitable and is as follows:

1.    . CHILD CUSTODY:    That the care, custody, and control of the minor child of the parties, J        P        d/o/b    '99, SSN              , shall be awarded to the Petitioner, with reasonable visitation reserved in the Respondent.

The parties agree that each shall keep the other' informed of the physical status of the minor child and all other matters which are pertinent to the contintuation of a strong relationship between parent and child. and neither party shall alienate the affection of the child for the other party.

2.    VISITATION:   The Respondent shall be allowed visitation with the minor child outside the State of Nebraska and shall be responsible for the cost of transportation for said visitation.

3.    INCOME TAX DEPENDENCY:        The Respondent shall be entitled to claim the minor child as a dependent for income tax purposes during the even numbered years as long as he pays child support promptly and in a timely fashion and as long as he is current on his child support as of December 31 of the applicable tax year.  This income tax dependency shall remain the same until the minor child is emancipated or until further

2

47

order of this court.

4.   UNREIMBURSED MEDICAL EXPENSES:   The Petitioner shall be responsible for the first $480.00 of all unreimbursed medical expenses incurred for the benefit of the minor child, to include therapy, medical, dental, optometric, orthodontic and pharmaceutical expenses.  Thereafter each party shall be responsible for 50% of any and all unreimbursed medical expenses.

5.   CHILD SUPPORT:   The Respondent shall pay child support in the amount of $622.00 per month to the Nebraska Child Support Payment Center, PO Box 82849, Lincoln NE 68501, commencing on the first day of January, 2004 and a like sum on the first day of each month thereafter until the minor child reaches the age of majority, dies, marries, becomes emancipated or until further order of the Court.

6.   DAY CARE EXPENSES:   The Respondent shall pay 50% of any and all work-related day care expenses upon receiving day care receipts from the Petitioner.

7.   LIFE INSURANCE:   Each party will carry a life insurance policy with a value of at least $100,000.00, naming the parties' minor child as the beneficiary.

8.   DIVISION OF PROPERTY:

a.   Personal Property :

The Petitioner shall receive as her sole, separate and individual property that personal property presently in her possession and control, to include any and all checking and savings account presently in her individual name.

The Respondent shall receive as his sole, separate and individual property that personal property presently in his possession and control, to include any

3

and all checking and savings account presently in his individual name.

b.    Insurance, Pension and Profit Sharing Plans:    Except as provided herein, any and all life insurance or related policies owned by the parties shall be theirs independently and individually without regard to the other as evidenced by the ownership on the policy.  In addition, any pension or profit sharing plans or individual retirement accounts of the parties, shall be theirs independently and individually without regard to the other.

9.    ALLOCATION OF DEBT:

a.    The Petitioner shall assume and hold the Respondent harmless from any and all debt separately incurred by her since the date of the parties' separation, namely April 15, 2002.

b.    The Respondent shall assume and hold the Petitioner harmless from the deficiency payments owed for he Hyundai and the KIA, as well as any and all debt separately incurred by him since the date of the parties' separation, namely April 15,2002.

10.    ALIMONY:    Neither party shall be obligated to pay alimony to the other.

11.    ATTORNEY FEES AND COSTS:    The Respondent shall pay $500.00 toward the Petitioner's attorney fees and the costs of this action shall be taxed to the Petitioner.

12.    INCOME TAX RETURNS:    The parties agree to file separate income tax returns for the year 2003.  To the extent that any tax is payable by each respective party, such tax shall be paid by the respective party.  To the extent that any refund is received or

4

available by the respective parties, said refund shall be the sole and separate property of such party.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.     That the marriage of the parties be and the same is hereby dissolved, and that such dissolution shall not become final, except for purposes of appeal, until the death of one of the parties, or 30 days from the date of this decree, whichever event first occurs. Neither party is free to remarry in this or any other jurisdiction for a period of six months. The 30 day time period and the six month time period runs from the date the decree of dissolution is signed by the Court and filed with the Clerk of the District Court of Lincoln County, Nebraska.

2.     That the Court's findings hereinabove and the parties' settlement agreement are incorporated herein by this reference as if fully set forth hereunder. The parties are ordered to abide by such findings in all respects and they are further ordered to execute such documentation as may be reasonably necessary to accomplish such division of property and assignment of debt and in the absence of such documentation, such Order does hereby constitute an actual granting and conveyance of such property. Costs are hereby taxed to the Petitioner.

3.     That the Respondent shall be required to furnish the Clerk of the District Court of Lincoln County, Nebraska, his address, telephone number, social security number, the name, address and telephone number of his employer, whether he has access to employer-related  health insurance coverage, and any other information the Court shall deem relevant until the child support judgment set forth herein is paid in full. The

5

Respondent shall also be required to advise the clerk of any changes in such information between the time of the entry of the decree and the payment of the child support judgments in full.  Failure to comply with this provision shall be punishable by contempt.

In the event the Respondent fails to pay any child support payment, as such failure is certified each month by the district court clerk in cases where court-ordered support is delinquent in an amount equal to the support due and payable for a one-month period of time, he shall be subject to income withholding, and may be required to appear in Court on a date to be determined by the Court and show cause why such payment was not made. In the event the Respondent fails to pay and appear as ordered, a warrant shall be issued for his arrest.

BY THE COURT:

District Judge

6

5± 51