IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ESTER ELLEN NELSON, | ) | |
|              Petitioner, | ) | 2:11-cv-00140-GEB-JFM |
| | ) | |
|       v. | ) | FINDINGS OF FACT AND |
| | ) | CONCLUSIONS OF LAW |
| JOSEPH PETTERLE, | ) | |
| | ) | |
|              Respondent. | ) | |
| _____ | ) | |

A bench trial was held in this action on March 15, 2011. Petitioner seeks the return of her 11 year old son to Iceland under the Hague Convention on the Civil Aspects of International Child Abduction ("Convention"). Respondent is the child's father, who lives in California.

The following witnesses testified: Petitioner, Respondent, and Respondent's father, Joseph E. Petterle. The parties stipulated to the admission of Petitioner's Exhibits 1 through 18. The parties also stipulated to facts, which were read into the record by counsel.

The following findings of fact and conclusions of law are made under Federal Rule of Civil Procedure 52, after considering the testimony and documentary evidence presented.

## I. FINDINGS OF FACT

### A.  Background

1. Petitioner, Ester Nelson, is the mother of the child involved in this matter ("child"). (Pet'r's Ex. ("Ex.") 1.)

1          2. Respondent, Joseph Petterle, is the child's father. (Ex.
2   1.)

3          3. Petitioner and Respondent were married in January of 1999,
4   at Lake Tahoe, California.

5          4. The child was born in 1999 in the United States.

6          5. The parties and child lived together in Sparks, Nevada
7   until 2001, when they moved to Oceanside, California.

8          6. Petitioner and Respondent separated in January of 2002.
9   Upon separation, Petitioner and the child moved to Gothenburg, Nebraska;
10  Respondent remained in California.

11         7. While living in Nebraska, Petitioner commenced a proceeding
12  for Legal Separation. Petitioner modified the Legal Separation into a
13  proceeding for divorce.

14         8. A Decree of Dissolution of Marriage ("Decree") was granted
15  on January 27, 2004, by the District Court of Lincoln County, Nebraska.
16  (Ex. 2.) The Decree awarded Petitioner "care, custody and control" of
17  the child, "with reasonable visitation reserved in the Respondent."

18         The child custody portion of the Decree states:

19       1.   CHILD CUSTODY:     That the care, custody and
         control of the minor child of the parties . . .
20       shall be awarded to the Petitioner, with reasonable
         visitation reserved in the Respondent.
21
           The parties agree that each shall keep the
22       other' [sic] informed of the physical status of the
         minor child and all other matters which are
23       pertinent to the continuation of a strong
         relationship between parent and child, and neither
24       party shall alienate the affection of the child for
         the other party.
25
26  (Ex. 2, p. 2.)

27         9. Since the child has been of school age, Respondent has had
28  visitation of the child every summer. Respondent testified the child

would spend at least two months with him each summer, from approximately the end of a school year until shortly before the start of the next school year.

10. In 2007, Petitioner and child moved to Moscow, Idaho so Petitioner could attend the University of Idaho. Respondent did not object to the move.

**B.   Petitioner's Move to Iceland**

11. In 2008, Petitioner received two scholarships to attend the University of Iceland.

12. Petitioner has family in Iceland, including her grandmother, four older brothers and numerous aunts, uncles and cousins. Petitioner resided briefly in Iceland as a child.

13. Petitioner first discussed moving to Iceland with Respondent in 2008 when she requested he sign a passport application for the child. Petitioner told Respondent she won two scholarships and was moving there to attend school.

14. Respondent testified that Petitioner presented the move to Iceland "as a package deal" with a "closed end." Respondent believed Petitioner and the child's move to Iceland was temporary.

15. Respondent signed the child's passport application.

16. Petitioner moved to Iceland in July of 2009. Petitioner's primary purpose in moving to Iceland was to complete her university training so she could improve her situation for herself and her family. Petitioner had discussed the idea of moving to Iceland with her children (the child and her 17 year-old son from another relationship).

17. At the time of Petitioner's move to Iceland, she abandoned Idaho as her home. Petitioner did not maintain a residence in Idaho and had no intention of returning to Idaho, Nebraska, or California. When

3

Petitioner moved to Iceland, she sold her furniture and vehicle, and packed only things that were "irreplaceable." The child helped her decide what items to keep and move.

18. When Petitioner moved to Iceland, she had not made a final decision to remain in Iceland after completing college. However, the possibility of remaining in Iceland permanently was an option from the beginning. Petitioner made her decision to remain in Iceland gradually, as she settled into her new home with the child. After a time, it became Petitioner's settled purpose to live in Iceland full-time with the child. Petitioner discussed remaining in Iceland with the child and they came to the decision to remain in Iceland as a family.

19. Petitioner informed Respondent of her intention to remain in Iceland permanently sometime after the New Year in 2010, when she told Respondent she was working on obtaining her Icelandic citizenship.

20. Respondent testified Petitioner first told him that she wanted to stay in Iceland permanently in April of 2010. Respondent further testified that he told Petitioner he "was not interested" in the child obtaining Icelandic citizenship.

21. Respondent's testimony indicates he would not have signed the child's passport application had he thought Petitioner would stay in Iceland permanently.

22. At the time of Petitioner's move to Iceland, the child was on summer vacation with Respondent in Sacramento, California. The child flew to Iceland to be reunited with Petitioner in the second week of August, 2009.

**C.   The Child's Time in Iceland**

23. The child resided continuously with Petitioner in Iceland from the middle of August, 2009, until July 2, 2010. Petitioner and the

child lived in family campus housing in Iceland. There were multiple children around the child's age living in campus housing, and the child made a number of friends. The children in campus housing attend the same school as the child.  The child participated in an Iceland soccer league and joined a basketball team; both held practice multiple times a week. The  child also spent time with his extended family, including children around his age. Some of Petitioner's extended family live in the same town as Petitioner, and others live less than thirty minutes away.

24. The child attended his community school in Iceland for the entire 2009-2010 academic year. Children at the school learn both Icelandic and English. The child was in the fifth grade, but participated in the sixth grade English class.

25. The principal of the child's Icelandic school wrote a letter stating his "attendance and his academic position is reasonable," his "conduct in school was normal," and "his social status among his peers was good." (Ex. 18.)

26. Petitioner testified that the child's academic year in Iceland was normal, and she and the child would do their homework together.

27. Petitioner testified that the child felt at home in Iceland and called himself the "Viking" because of its cultural significance.

28. Once in Iceland, Petitioner obtained Icelandic citizenship for herself. She is a dual citizen of Iceland and the United States. Petitioner testified the child obtained Icelandic citizenship automatically when she became an Icelandic citizen and that he can make his own decision about retaining his Icelandic citizenship as an adult.

Therefore, the child is also a dual citizen of Iceland and the United States.

29. Petitioner also testified that she did not discuss obtaining Icelandic citizenship for the child with Respondent because she did not apply for it.

### D.   Respondent's Retention of the Child

30. Petitioner and Respondent agreed that the child would spend the 2010 summer vacation in Sacramento with Respondent. By their agreement, the child flew to the United States on July 2, 2010, and was scheduled to return to Petitioner in Iceland on August 15, 2010. The child was enrolled in school in Iceland for the 2010-2011 school year.

31. A reservation for the child's return flight to Iceland on August 15, 2010 was booked, but Respondent did not return the child to Petitioner's custody in Iceland per their agreement. Since August 15, 2010, Respondent has refused to return the child to Petitioner's custody. Respondent testified that he had decided he would keep the child in California before the child arrived in the United States on July 2, 2010.

32. On August 9, 2010, Respondent, through counsel, filed an ex parte Petition for Custody and Protective Order in the Superior Court of Sacramento, Family Court ("Sacramento County Court"). On August 9, 2010, the Sacramento County Court issued an ex parte temporary order which prevented removal of the child from California.

33. Petitioner was unaware of the ex parte proceedings in the Sacramento County Court.

34. On August 12, 2010, Petitioner called Respondent to finalize plans for the child's agreed upon return to Iceland. The child

answered the phone, and while Petitioner was talking to her son, an email arrived at Petitioner's computer from Respondent.

The August 12, 2010 email stated:

> Hi - I'll cut to the chase: [Child] has made it clear, quite on his own, that he doesn't want to return to Iceland. He is adamant. For this, and for my own reasons, I have had the matter examined. At this time, the State of California has decided that no one is permitted to remove him from the state. Further information can be obtained from, and all questions regarding this case be directed to: Sean Gejerde . . . .

35. Petitioner retained counsel in the United States to represent her in the state court custody proceedings. On November 16, 2010, Petitioner's attorney filed in state court: (1) a Motion to Quash Petition for Custody Based on Lack of Subject Matter Jurisdiction, and (2) Petition for Return of child under the Convention.

36. On January 12, 2011, the Sacramento County Court granted Petitioner's Motion to Quash Respondent's Petition for Custody because California lacked subject matter jurisdiction regarding the child's custody. The Sacramento County Court vacated all prior orders and dismissed Respondent's case. (Ex. 5; March 14, 2011 Sacramento County Court Minute Order, ECF No. 25.)

37. Petitioner's Petition under the Convention was set for hearing in state court for February 9, 2011. Before the matter could be heard in state court, Respondent removed the Petition to federal court.

38. Petitioner at no time agreed or consented to the child remaining with Respondent after August 15, 2010.

39. After the parties separated in 2002 until August 15, 2010, the child always lived with Petitioner and spent summer vacations with Respondent.

40. From the time of the child's birth forward, Petitioner continuously exercised her custodial rights as a parent. From and after the divorce in 2004, Petitioner continuously exercised her rights of "control, custody and care," under the Decree.

**E.   The Child's Views**

41. Respondent testified that the child has expressed to him that the child wanted to stay in the United States, and has asked if he can live with Respondent.

42. Respondent testified that after picking up the child in Seattle, Washington at the beginning of his 2010 summer visit, the child said in the airport hotel, "Please don't make me go back to Iceland." Respondent also testified that the child has told him he wants to visit Iceland.

43. Petitioner testified the child has never expressed to her a desire to live in California. Petitioner also testified that in approximately late July or early August of 2010, when she spoke to the child on the telephone, he was crying and said he was "homesick."

44. Petitioner testified that initially she did not want to ask the child where he preferred to live because she did not want to put him "in the middle," but that later she asked him where he wanted to live. Petitioner testified the child responded that he didn't know what he was supposed to say, and that he wanted to "go back and forth" like he always had.

44. John E. Petterle, the child's paternal grandfather, spent time with the child during the summer of 2010 for three to four days at a time. They spent time together golfing and socializing with other family members as well as the child's friends. Mr. Petterle testified the child had a definite desire not to return to Iceland and expressed

to him a desire to stay in California. Mr. Petterle also testified that while at a party, the child expressed to his friends a desire to stay in the United States, telling stories about what he disliked about Iceland, such as the weather and riding a bus. Mr. Petterle also testified that the child told him he did not like the portions of his studies that were taught in Icelandic, that he had already learned a lot of what he was studying in Iceland, and that classes in Iceland were "unruly."

Mr. Petterle testified that in his opinion, the child's objections to his Icelandic schooling are "reasonable."

## II. DISCUSSION

### A.   The Convention

The Hague Convention on the Civil Aspects of International Child Abduction "was adopted in 1980 in response to the problem of international child abductions during domestic disputes[, and] . . . seeks to secure the prompt return of children wrongfully removed to or retained in any Contracting State[.]" <u>Abbott v. Abbott</u>, --- U.S. ----, 130 S. Ct. 1983, 1989 (2010) (internal quotation marks omitted). "The Convention's central operating feature is the return remedy. When a child under the age of 16 has been wrongfully removed or retained, the country to which the child has been brought must order the return of the child forthwith, unless certain exceptions apply." <u>Id.</u> (citation and internal quotation marks omitted).

"The Convention . . . empower[s] courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." 42 U.S.C. § 116011(b)(4). Therefore, in deciding an action under the Convention, the district court is "concerned . . . only with the merits of the retention claim, i.e., whether [Respondent's] retention of [child] in [California] is

wrongful." <u>de Silva v. Pitts</u>, 481 F.3d 1279, 1282 (10th Cir. 2007). The district court "may not resolve the question of who, as between the parents, is best suited to have custody of the child." <u>Cuellar v. Joyce</u>, 596 F.3d 505, 508 (9th Cir. 2010).

The retention of a child is "wrongful" under the Convention when:

> a) it is in breach of rights of custody attributed to a person . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the . . . retention; and
>
> b) at the time of . . . retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

<u>Abbott</u>, 130 S. Ct. at 1989 (quoting Convention, art. 3).

Accordingly, the Ninth Circuit has identified four questions that "a court applying [the Convention] must . . . answer":

> (1) When did the removal or retention at issue take place?
>
> (2) Immediately prior to the removal or retention, in which state was the child habitually resident?
>
> (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence? [and]
>
> (4) Was the petitioner exercising those rights at the time of the removal or retention?

<u>Mozes v. Mozes</u>, 239 F.3d 1067, 1070 (9th Cir. 2001).

**B. Petitioner's Prima Facie Case**

Petitioner has the burden of proving by a preponderance of the evidence that Respondent's retention of the child in the United States was wrongful under the Convention. 42 U.S.C. § 11603(e)(1)(A). Specifically, Petitioner must show: "(1) the child was habitually resident in [Iceland] at the time of the . . . retention; (2) the . . .

10

1  retention was in breach of [P]etitioner's custody rights under
2  [Icelandic law,] and (3) [P]etitioner was exercising those rights at the
3  time of . . . retention." de Silva, 481 F.3d at 1281 (citation omitted).

4             **1)   The Child's Habitual Residence at the Time of Retention**

5             The parties agree the child's retention occurred when
6  Respondent kept him in the United States at the conclusion of his
7  agreed-upon summer vacation on August 15, 2010. Therefore, the issue is:
8  Where was the child habitually residing as of August 15, 2010?

9             "[T]he term 'habitual residence' is intentionally left
10  undefined in the Convention . . . ." Papakosmas v. Papakosmas, 483 F.3d
11  617, 622 (9th Cir. 2007). However, the Ninth Circuit has "developed an
12  analytical framework to provide 'intelligibility and consistency' in the
13  determination of a child's habitual residence." Id. (quoting Holder v.
14  Holder, 392 F.3d 1009, 1015 (9th Cir. 2004)). Under this framework, the
15  first question is "whether there is a settled intention to abandon a
16  prior habitual residence." Id. (citing Mozes, 239 F.3d at 1075). "One
17  need not have [the] settled intention [to abandon a prior habitual
18  residence] at the moment of departure; it could coalesce during the
19  course of a stay abroad originally intended to be temporary." Mozes, 239
20  F.3d at 1075. "[O]ne may effectively abandon a prior habitual residence
21  without intending to occupy the next one for more than a limited
22  period." Id. "Nor need [a person's] intention be expressly declared, if
23  it is manifest from one's actions . . . ." Id.

24             "Second, there must be (A) an actual change in geography,
25  combined with (B) the passage of an appreciable period of time . . .
26  sufficient for acclimatization." Holder, 392 F.3d at 1015 (citations and
27  internal quotation marks omitted). "[T]he inquiry is . . . whether the

28

1 [child's life has] become firmly rooted in [his] new surroundings." <u>Id.</u>
2 at 1019.

### a. Settled Intention to Abandon Prior Habitual Residence

5        Petitioner has shown that she had a settled intention to
6 abandon the United States as her habitual residence. The parties
7 stipulated that: 1) when Petitioner moved to Iceland, she abandoned
8 Idaho as her home; 2) the possibility of remaining in Iceland
9 permanently was an option from the beginning; 3) Petitioner made her
10 decision to remain in Iceland gradually, as she settled into her new
11 home with the child; and 4) after a time, it became Petitioner's settled
12 purpose to live in Iceland full-time with the child. Further,
13 Petitioner testified that she discussed living in Iceland permanently
14 with the child, and that they came to the decision to stay together as
15 a family.

16        Respondent argues Petitioner's settled intention alone is not
17 enough to establish Iceland as the child's habitual residence because as
18 the child's parents, Respondent and Petitioner must have had a "shared
19 intent" for the child to reside in Iceland. However, the Ninth Circuit
20 has stated: "'the intention or purpose which has to be taken into
21 account is that of the **person or persons** entitled to fix the place of
22 the child's residence.'" <u>Papakosmas</u>, 483 F.3d at 622 (quoting <u>Mozes</u>, 239
23 F.3d at 1076) (emphasis added). In most circumstances, this is both
24 parents because the child is living with the parents as a family at the
25 time of his or her wrongful removal or retention, or the parents have
26 shared custody, if they live separately. However, in this case, only
27 Petitioner had "custody, care and control" of the child under the
28 Nebraska divorce decree, with "reasonable visitation" reserved in

Respondent. (Ex. 2, p. 2.) Therefore, the shared intent "formula [will] not work." See Kijowska v. Haines, 463 F.3d 583, 587 (7th Cir. 2006) (stating evaluating parents' shared intent in deciding the habitual residence of an infant "does not work when . . . the parents are estranged essentially from the outset, the birth of the child (or indeed before)"); see also In re J (C v. S) [1990] 2 AC 562, 579 (United Kingdom Court of Appeals decision under the Convention stating "where a child of [two] is in the sole lawful custody of the mother, his situation with regard to habitual residence will necessarily be the same as hers.")

Respondent also argues Petitioner did not have the sole ability to determine the child's residence, relying on a provision of Nebraska law which requires a parent to obtain a "move away order" before moving out of state. However, Respondent never raised the lack of a "move away order" until Petitioner filed the instant action. Respondent did not object to Petitioner's move to Idaho, and he did not object to her move to Iceland, even if he believed it was temporary. Therefore, Respondent acquiesced in Petitioner's ability to solely determine the child's place of residence, and he cannot rely upon Nebraska's "move away order" requirement to prevent the child's return under the Convention. See Shalit v. Coppe, 182 F.3d 1124, 1131 (9th Cir. 1999) (stating "abductors [cannot] rely upon . . . a 'dead' decision taken prior to the removal but never put into effect" in defense of a petition under the Convention); see also de Silva, 481 F.3d at 1284 ("[T]he alleged wrongdoer may not rely upon a stale decree awarding him or her custody, the provisions of which have been derogated from subsequently by agreement or acquiescence of the parties, to prevent the child's return under the Convention.").

### b.   Acclimatization

Petitioner has also shown that the child has acclimated to life in Iceland.  He lived in Iceland for approximately eleven months, attended a full year of school, and joined local soccer and basketball teams. The child socialized with extended family and made friends with children who lived in his housing complex and attended his school. The child also referred to himself as the "Viking," indicating he associated Iceland with his identity and heritage. Further, Petitioner testified that she came to the decision to live in Iceland permanently as a family, after discussing it with the child. See Mozes, 239 F.3d at 1079-80 (stating parents' intentions "affect the length of time necessary for a child to become habitually resident, because the child's knowledge of these intentions is likely to color its attitude toward the contacts it is making"). Although both Respondent and Mr. Petterle both testified that the child objected to returning to Iceland, testimony from Petitioner is conflicting on the subject, and the child's stated complaints about Iceland, i.e. struggling with a new language, the weather and having to ride a bus, would be expected from any eleven-year-old boy who has moved to a new country. The child's complaints do not disprove that his life has "become firmly rooted" in Iceland.

For the stated reasons, Petitioner has shown that Iceland was the child's habitual residence at the time of his retention.

### 2)   Breach of Icelandic Custody Rights

Petitioner must show Respondent's "retention of [the child] was in breach of [her] rights of custody under [Icelandic law]." Shalit, 182 F.3d at 1128. The Convention defines "rights of custody" to include "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence."

Convention, art. 5. "Rights of custody" may arise "by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State." Id., art. 3.

> In ascertaining whether there has been a wrongful removal or retention within the meaning of [the Convention], . . . the [Court] . . . may take notice directly of the law of, and of judicial or administrative decisions, formally [recognized] or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.

Id., art. 14.

Under Iceland law, "the custody of a child entails that the parents have the right and obligation to manage the personal affairs of their child and determine his place of residence." Iceland's Act in Respect of Children, no. 76/2003, with later amendments, art. 28. (Ex. 16.) Further, Iceland recognizes divorce decrees issued in the United States by competent authorities in accordance with law. (Ex. 19.)

Petitioner was awarded "care, custody and control" of the child under the Nebraska state court Divorce Decree, and she is registered in Iceland as divorced pursuant to the Nebraska Decree. (Ex. 2, p. 2.) Therefore, Petitioner has shown that Respondent's retention of the child at the conclusion of an agreed upon summer visit violated her rights of custody under Iceland law.

### 3)   Petitioner's Exercise of Custody Rights

The retention of a child is wrongful under the Convention only when "b) at the time of . . . retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the . . . retention." Convention, art. 3.

15

"[P]etitioner's burden [on this element] is minimal." <u>Asvesta v. Petroutsas</u>, 580 F.3d 1000, 1018 (9th Cir. 2009).

> [I]f a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to "exercise" those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child. Once [a court] determines that the parent exercised custody rights in any manner, [it] should stop – completely avoiding the question whether the parent exercised the custody rights well or badly.

<u>Id.</u> (quoting <u>Friedrich v. Friedrich</u>, 78 F.3d 1060, 1066 (6th Cir. 1996)).

The parties stipulated: 1) Petitioner at no time agreed or consented to the child remaining with Respondent after August 15, 2010, and 2) from the time of the child's birth forward, Petitioner continuously exercised her custodial rights as a parent. Therefore, Petitioner has shown that on August 15, 2010, her rights of custody were actually exercised or would have been exercised but for the retention.

**C.   Affirmative Defenses**

"In the event that a petitioning party shows that the child was wrongfully removed or retained, [the Convention] provides certain exceptions to [its] mandate that the child be returned to his or her habitual residence." <u>Avestas</u>, 580 F.3d at 1004. However, the "exceptions or defenses . . . must [be] narrowly interpret[ed]." <u>Id.</u>

The affirmative defenses under the Convention are set forth in Articles 13 and 20 of the Convention. Respondent has raised two affirmative defenses, which are discussed below.

**1)   Fundamental Principals relating to Human Rights and Fundamental Freedoms**

Under Article 20 of the Convention, a court may decline to return a wrongfully retained child if returning the child would violate

"fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms." This defense "is meant to be 'restrictively interpreted and applied . . . on the rare occasion that return of a child would utterly shock the conscience of the court or offend all notions of due process.'" Habrzyk v. Habrzyk, --- F. Supp. 3d----, 2011 WL 63903, at *11 (N.D. Ill. 2011) (quoting Hazbun Escaf v. Rodriguez, 200 F. Supp. 2d 603, 614 (E.D. Va. 2002) (citations omitted)); see also In re Haque Child Abduction Application, No. 08-2030-CM, 2008 WL 913325, at *15 (D. Kan. Mar. 17, 2008) ("Article 20 envisioned a limited situation where human rights concerns, most likely defined within the parameters of other international agreements, would prohibit return.") (citations omitted). Respondent has the burden of proving this affirmative defense by clear and convincing evidence. 42 U.S.C. § 11603(e)(2)(A).

Although Respondent raised this affirmative defense in his trial brief, he did not argue its application at trial. Further, no evidence indicates that returning the child to Iceland would raise "human rights concerns" or otherwise "utterly shock the conscious of the court." Therefore, Respondent has not shown Article 20 of the Convention prevents the child's return to Iceland.

### 2)   Mature Child's Objection

The district court "may properly refuse to order the return of [a child] . . . if it 'finds that the [child] object[s] to being returned and ha[s] attained an age and degree of maturity at which it is appropriate to take account of [his or her] views.'" Gaudin v. Remis, 415 F.3d 1028, 1037 (9th Cir. 2005) (citing Convention, art. 13). Respondent has the burden of proving this affirmative defense by a preponderance of the evidence. 42 U.S.C. § 11603(e)(2)(B).

17

The Convention does not establish a minimum age to trigger this provision, and if a court determines that the child's views are "the product of undue influence," they should not be taken into account. Tsai-Yi Yang v. Fu-Chiang Tsui, 499 F.3d 259, 279 (3rd Cir. 2007). Further, "courts distinguish between a child's 'objection' to return, as referenced in the Hague Convention, 'and a child's wishes, as expressed in a custody case . . . . [T]he notion of objections . . . is far stronger and more restrictive than that of wishes in a custody case.'" Haimdas v. Haimdas, 720 F. Supp. 2d 183, 206 (E.D.N.Y. 2010) (quoting Morrison v. Dietz, No. 07-1398, 2008 WL 4280030, at *13 (W.D. La. Sept. 17, 2008)). "Expression of a preference to remain in the respondent's country 'is not enough . . . to disregard the narrowness of the age and maturity exception to the Convention's rule of mandatory return.'" Falk v. Sinclair, 692 F. Supp. 2d 147, 165 (D. Me. 2010) (quoting Tsai-Yi Yang, 499 F.3d at 279).

Respondent has not shown by a preponderance of the evidence that the child objects to returning to Iceland. The child did not testify at trial, and the testimony of the parties and Mr. Petterle is conflicting concerning the child's views. Although Respondent testified that the child asked Respondent not to make him go back to Iceland, Respondent provided no context for the statement. Respondent also testified that the child told him he wants to visit Iceland, which is inconsistent with not wanting to be in Iceland. Mr. Petterle testified that the child had a definite desire not to return to Iceland, but when he provided examples of the child's comments on the subject, they boiled down to complaints about cultural differences and having to learn a new language. Additionally, Petitioner testified that during the child's summer 2010 visit with his father, he cried on the telephone and said he

was "homesick." Petitioner also testified that when she specifically asked the child where he wanted to live, he said he wanted to "go back and forth" like he always had.

Further, there is no evidence in the record concerning the child's level of maturity to determine if his views should even be considered, other than Mr. Petterle's opinion that the child's objections to his schooling in Iceland are "reasonable."

For the stated reasons, Respondent has not shown that the "mature child objection" exception should be applied in this case.

### III. CONCLUSIONS OF LAW

1. Father's retention of the child occurred on August 15, 2010.

2. Immediately prior to child's retention, Iceland was the child's habitual residence.

3. Father's retention of the child breached Petitioner's rights of custody under Icelandic law.

4. Petitioner was exercising her custodial rights at the time of the child's retention.

5. Respondent did not show by clear and convincing evidence that the child's return to Iceland would violate fundamental principles of the United States relating to the protection of human rights and fundamental freedoms.

6. Respondent did not show by a preponderance of the evidence that the child objects to being returned to Iceland and has attained an age and degree of maturity at which it is appropriate to take account of his views.

///

///

                    **IV. CONCLUSION**

        For the stated reasons, Petitioner's Petition for Return of
the child under the Convention is granted.

        At the trial, Petitioner amended her request that the child be
"returned forthwith" by stating that the child could remain in
California for the remainder of the academic year. However, Petitioner
has changed her position on this matter and filed a proposed order and
a "Declaration in Support of Proposed Order" on March 17, 2011. (ECF
Nos. 28-29.) Petitioner has reiterated in these filings her request that
the child be returned forthwith, as her petition originally requested,
because Respondent has threatened to delay the return of the chid by
further litigation. Respondent filed a response to Petitioner's filings
late on March 18, 2011, in which he indicates the Petitioner's filings
should be disregarded and argues that this Court "does not have
jurisdiction to determine custody rights, only to determine whether the
child should be returned to Iceland." (ECF No. 31, 4:4-5.) Respondent is
correct, and the Court's ruling will reflect that jurisdiction.
Therefore, the Court issues the following order:

        1. Respondent shall return the child to Petitioner's physical
custody immediately; since the Court issued an order at the conclusion
of the trial that Petitioner shall have visitation with the child
commencing after school today, March 18, 2011, that order is only
modified as follows: Petitioner need not return the child to Respondent
and may herself and/or through her attorney, make arrangements to return
the child to Iceland.

        2. In the event the parties are not timely made aware of the
above order, Respondent shall return the child to Petitioner's physical
custody at 10:00 a.m. on March 21, 2011. The transfer of the child's

1  physical custody shall occur at the office of Petitioner's counsel,
2  located at the University of the Pacific, McGeorge School of Law, 3200
3  5th Avenue, Sacramento, California, Faculty Office Building, Room 185.

4       3. Petitioner or her counsel shall proceed to place the child
5  on the next reasonably available commercial flight to Reykjavik,
6  Iceland. If Petitioner does not accompany child on the flight,
7  Petitioner's counsel will make appropriate arrangements for child to
8  travel as an unaccompanied minor.

9       4. Respondent shall fully cooperate in the coordination and
10 return of child to Iceland, including providing child's passport and any
11 other documents necessary for international air travel. Respondent is
12 responsible for the cost of the child's transportation to Petitioner's
13 home in Iceland. See 42 U.S.C. § 11607 (b)(3) ("Any court ordering the
14 return of a child . . . shall order the respondent to pay necessary
15 expenses incurred by or on behalf of the petitioner, including court
16 costs, legal fees, foster home or other care during the course of
17 proceedings in the action, and transportation costs related to the
18 return of the child, unless the respondent establishes that such order
19 would be clearly inappropriate.").

20      5. The Respondent is admonished that failure to comply with
21 the terms of this order shall constitute contempt of court and may
22 result in imposition of a fine and/or imprisonment.

23      6. The United States Marshals Service is directed to assist in
24 the execution of this Order as necessary, and the United States Marshals
25 Service may enlist the assistant of other law enforcement authorities as
26 necessary to aid in any respect of securing the safe return of child to
27 Iceland.

28

7. Petitioner's counsel does not seek an Order for attorneys fees in this matter. In the event, however, that it becomes necessary for Petitioner to seek enforcement of this order or any other order of this Court, Petitioner may file an application for attorneys fees to be paid by Respondent.

8. The parties may mutually agree upon alternative arrangements for the return of child to Iceland by written stipulation and proposed order filed with the Court.

Dated:  March 18, 2011

_____
GARLAND E. BURRELL, JR.
United States District Judge